STATE of Missouri, Plaintiff–Respondent,

v.

Jimmy Dean ELEM, Defendant–Appellant.

No. 52142.

Missouri Court of Appeals, Eastern District, Division One.

March 29, 1988. Application to Transfer Denied June 14, 1988.

Paul E. Madison, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted by a jury of second-degree robbery and was sentenced by the court as a persistent offender to 25 years in prison. He appeals; we affirm.

The victim, a black woman, was walking home from work on October 5, 1985, at about 11:00 p.m. A black man, wearing grey sweat pants, a grey, hooded sweat shirt, and white high-top tennis shoes jogged past her from behind, ran ahead, and then turned and jogged toward her. She saw his face as he approached because the area was well-lighted. As he passed, he grabbed her, pulled her into an adjacent vacant building, and hit her. He demanded money and threatened her with a bottle he broke against a wall. She pulled away from him and ran back to the street, where he caught her purse, breaking its handle and snatching it from her. She again saw his face. He fled into a dead-end street and then south across a small park. The victim, along with two black women in a car who had seen the man steal the purse, followed him as far as the dead-end. The victim noticed the man had "french-braided" hair.

Officer John Bridges of the Wellston Police Department spoke to two black women in a car at the police station and again near a liquor store, which was a few blocks south of the scene of the incident. At the liquor store Bridges detained defendant, who was at the liquor store, asking for a clothes hanger to open his car; he said he had locked his keys in his car. Defendant was wearing cut-off blue jeans, a T-shirt, and white high-top tennis shoes despite the fact that the weather was "chilly," and he was the only person at the liquor store in shorts. Bridges noticed defendant was perspiring and his hair had french braids. He took defendant to the vacant building, the scene of the assault, where the victim, sitting in another officer's car, identified him as her assailant. Another officer found grey sweat pants, inside out and with burrs stuck to them, a grey, hooded sweat shirt, and the victim's purse under a car parked near the liquor store. The victim identified the sweat pants and sweat shirt as those worn by the robber.

■ In his principal point on appeal defendant contends the court erred in overruling his objection to the state's use of peremptory challenges to strike black persons from the jury panel. He alleges this error led to a denial of his due process rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

The venire consisted of 25 persons, including three blacks, jurors 16, 22, and 24. Each party had six peremptory challenges. The state struck two black males, jurors 22 and 24, and left on the panel a black female, juror 16. After defendant objected to the jury panel, the prosecutor indicated he struck juror 22 because of his shoulder-length, unkept, curly hair, which was "the longest hair of anyone on the panel," and because of his mustache and "goatee-type beard." Juror 24 also had a mustache and a goatee-type beard. The prosecutor stated he didn't "like the way they looked" and he believed they would not be good jurors.

They were the only two on the venire who had facial hair. Further, juror 24 had been at a supermarket when a robbery had occurred, and a man pointed a sawed-off shotgun at him during the incident. The prosecutor said he did not want him on the jury in this case, which did not involve a gun, because he might feel that a robbery required a gun. The court denied the motion attacking the panel.

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1722–23 (1986), a prima facie case of purposeful discrimination in the selection of a jury panel is established by a showing that the government's use of its peremptory challenges and any other relevant circumstances "raise an inference that the prosecutor ... exclude[d] ... veniremen from the petit jury on account of their race." The Missouri Supreme Court first considered the *Batson* standard in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), and held the trial court must consider the prosecutor's explanation as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges. *Antwine*, 743 S.W.2d at 64. The state may rely on the prosecutor's legitimate "hunches" and experience so long as race is not the motive. *Id.* at 65. This case was tried after *Batson* was decided but before the decision in *Antwine*.

In *United States v. Ingram*, 839 F.2d 1327 (8th Cir.1988), a venire of 35 persons included two blacks. The prosecutor utilized one of six peremptory challenges to strike one of the two blacks. The defendant, a black man, moved for a mistrial based on the government's unconstitutional use of its challenges in violation of *Batson*. The district court denied the motion without requiring the prosecutor to provide an explanation for his strike. The United States Court of Appeals, Eighth Circuit, held that the trial court implicitly found the defendant had failed to establish a prima facie case as required by *Batson*. In affirming, the court said,

> In this case, the defendant, in support of his argument that a prima facie case of discrimination has been established, relies solely on the fact that the prosecu-

tion struck one of two potential black jurors. The Eighth Circuit has said that "bare reliance on the fact that the government used one of its peremptory challenges to exclude one of two black veniremen falls short of raising an inference of purposeful discrimination necessary to establish a prima facie case under *Batson*." [*United States v.*] *Porter*, 831 F.2d [760,] 767–68 [ (8th Cir.1987) ]. *See United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987). We conclude that the facts and circumstances of this case likewise do not raise the necessary inference of discrimination and that the district court was correct in overruling the motion for a mistrial without further inquiry of the prosecutor.

*Ingram*, 839 F.2d at 1330 (footnote omitted).

Another eighth circuit case similar to the present case is *United States v. Montgomery*, 819 F.2d 847 (8th Cir.1987). In *Montgomery* the court set forth the following facts:

> There were a total of four black persons available for selection as jurors, making up 14% of the venire. The government used two of its six strikes (33%) to eliminate two of the four black members of the venire. The defendant then used one peremptory challenge to strike one of the two potential remaining black jurors, so that the actual jury consisted of eleven whites and one black.

> Although the jury accepted by the government included two blacks, Montgomery asserts that these percentages indicate that black members of the jury panel were peremptorily struck at a rate in excess of double of that which a proportionate striking of blacks would have resulted in. He requests that his case be remanded pursuant to *Batson* for the district court to determine whether he has a *prima facie* case of purposeful discrimination and whether the government had permissible reasons for the strikes.

In rejecting the defendant's claim, the court of appeals said,

The facts and circumstances in the present case do not raise such an inference of racial discrimination. The fact that the government accepted a jury which included two blacks, when it could have used its remaining peremptory challenges to strike these potential jurors, shows that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. *Batson* does not require that the government adhere to a specific mathematical formula in the exercise of its peremptory challenges. Accordingly, we hold that the district court did not err in denying Montgomery's motion to dismiss the jury panel.

*Montgomery,* 819 F.2d at 851 (citation omitted).

Here, the three blacks made up 12 percent of the panel, compared to the 14 percent in *Montgomery.* In both cases the government used 33⅓ percent of its peremptory challenges to strike black veniremen. Moreover, additional factors support the trial court's ruling here that were not present in either *Ingram* or *Montgomery.* The victim was black, and the state gave an explanation. We believe the state's explanation constituted a legitimate "hunch." *See Antwine,* 743 S.W.2d at 65. The circumstances fail to raise the necessary inference of racial discrimination, and the court did not err in denying defendant's objection to the panel.

■ Defendant also contends the court erred in refusing to declare a mistrial when it was discovered the jury had considered evidence of an uncharged crime during its deliberations.

During trial the grey sweat pants and sweat shirt were admitted into evidence without objection. While the jurors were deliberating, the court permitted them to examine the clothing without objection. One juror apparently discovered a tightly rolled piece of paper in the pocket of the sweat shirt, which appeared to some jurors to be a "joint" or marijuana cigarette. The jurors informed the bailiff, and subsequently defendant requested a mistrial because the "joint" was evidence of a crime with which defendant was not charged. The court refused to declare a mistrial. It examined the garments and the rolled paper, stating it was impossible to determine what the rolled paper was or if it was a "joint" and found defendant suffered no prejudice from the jury's consideration of the item.

Prior to sentencing, the court held a hearing on defendant's contention in his motion for new trial that the court erred in refusing to grant a mistrial based on the jury's discovery of the "joint." The state argued defendant had not been prejudiced by the discovery and presented the testimony of the foreperson of the jury, Gwyn Harvey.

■ The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which the prejudice to the defendant can be removed in no other way. The decision to declare a mistrial rests largely within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Burroughs,* 740 S.W.2d 272, 274 (Mo.App.1987).

The circumstances here are similar to those in *State v. Beasley,* 731 S.W.2d 255 (Mo.App.1987). In *Beasley,* during its deliberations, the jury examined an overnight bag carried by defendant and inside it found some seeds and leaves, which some jurors speculated were tobacco or marijuana. We found no prejudicial error in the trial court's refusal to declare a mistrial after conducting a special voir dire of the jury panel. *Beasley,* 731 S.W.2d at 256–57. Although the trial court in *Beasley* held a more extensive hearing on the issue than did the trial court here, in substance we held in *Beasley* that the defendant suffered no prejudice because of the strength of the state's case. *Id.* at 257. The state in this case also made a strong case. We find no prejudicial error.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.