Jimmy ELEM, Appellant,

v.

James PURKETT, Appellee.

No. 93–1793.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1993.

Decided June 1, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied July 28, 1994.

David E. Woods, O'Fallon, MO, argued, for appellant.

Stephen Hawke, Asst. Atty. Gen., Jefferson City, MO, argued, (Ronald Jurgeson, Asst. Atty. Gen., appeared on the brief), for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

In this habeas action brought pursuant to 28 U.S.C. § 2254, petitioner Jimmy Elem appeals from a final order entered in the United States District Court for the Eastern District of Missouri denying his petition for a writ of habeas corpus. For reversal, petitioner argues that the district court erred in holding: (1) he failed to prove either cause and prejudice or a fundamental miscarriage of justice to overcome his procedural default of all but two of his claims; (2) he failed on the merits of his equal protection claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*); and (3) he failed on the merits of his due process claim. For the reasons discussed below, we affirm in part and reverse in part and remand the matter to the district court with directions.

In July of 1986, petitioner was convicted of second degree robbery following a jury trial in Missouri state court. The underlying offense involved an assault and robbery of an African–American woman who identified her assailant as an African–American man with "french-braided" hair and wearing a gray sweatsuit. Petitioner, who fit the description of the robber, was apprehended near the scene of the robbery. The victim identified him as her assailant. During jury selection, petitioner objected to the prosecutor's use of peremptory challenges to strike two African–American men from the jury panel. The prosecutor indicated that his reasons for the strikes were, in part, based upon the jurors' appearance. The state trial court overruled the objection. At trial, a gray sweatsuit was admitted into evidence. The victim identified the sweatsuit as the one worn by the robber.[1] During deliberations, the jury inadvertently discovered what appeared to be a marijuana cigarette, or "joint," in the sweatsuit. Petitioner moved for a mistrial on grounds that the "joint" was evidence of a crime for which petitioner had not been charged. The trial court denied the motion. After the jury returned a verdict of guilty, petitioner moved for a new trial on the same grounds. The state trial court heard testimony of the jury foreperson, who stated that the jury placed no emphasis on the "joint" in its deliberations. The trial court denied petitioner's motion for a new trial.

Petitioner was sentenced as a persistent offender and received a twenty-five year sentence. He appealed his conviction asserting two grounds: (1) the prosecutor's use of peremptory challenges to strike two African–American jurors violated *Batson;* and (2) the jury's inadvertent discovery of the apparent "joint" in the gray sweatsuit violated his due

---

**1.** At the time petitioner was apprehended by the police, he was wearing cut-off blue jeans and a T-shirt, and the sweatsuit was found underneath a nearby parked car.

process rights. The Missouri Court of Appeals affirmed his conviction. *State v. Elem,* 747 S.W.2d 772 (Mo.Ct.App.1988). Petitioner did not bring a state court action seeking post-conviction relief. He next filed a petition for writ of habeas corpus *pro se* in federal district court. The matter was referred to a United States magistrate judge, who recommended that the petition be denied without a hearing. *Elem v. Purkett,* No. 4:92CV1927 (E.D.Mo. Jan. 19, 1993) (report and recommendation). The district court adopted the magistrate judge's report and recommendation and denied the petition. *Id.* (Feb. 18, 1993) (order). This appeal followed.

### Procedural default

■ Petitioner first argues on appeal that the district court erred in holding that he is not entitled to habeas review of claims which he failed to raise on direct appeal. Of the ten claims asserted by petitioner, the district court declined to consider eight on grounds of procedural default not excused by cause and prejudice or amounting to a fundamental miscarriage of justice.[2] Petitioner now contends that his procedural default should be excused on grounds that a fundamental miscarriage of justice will result if his claims are not considered on their merits. *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (applying fundamental miscarriage of justice standard to penalty phase of capital murder case). In *Sawyer v. Whitley,* the Supreme Court considered whether the petitioner was eligible for habeas review of his death sentence under the fundamental miscarriage of justice doctrine, despite the procedural default of his constitutional claims. The Court explained, in that context, that "to show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* —— U.S. at ——, 112 S.Ct. at 2517. Having reviewed the petition in the present case, the district court held that petitioner "has not shown any facts to warrant concern about a fundamental miscarriage of justice." Slip op. at 4. Upon careful review, we agree. None of petitioner's procedurally defaulted claims, even if proven, would establish by clear and convincing evidence that petitioner is "actually innocent" of the offense such that no reasonable juror would have found him guilty. Accordingly, we affirm this aspect of the district court's order.[3]

### Batson violation

■ Petitioner next argues that the district court erred in holding that his equal protection rights under *Batson* were not violated as a result of the prosecutor's use of peremptory challenges to strike two African-American jurors from the jury panel. Petitioner challenges the legitimacy of the prosecutor's explanation for striking jurors 22 and 24.[4] The prosecutor stated that he struck juror 22 because that juror had long curly hair, a mustache and a goatee-type beard. He also noted that juror 24 had a mustache and a goatee-type beard. Apparently they were the only two with facial hair on the panel. The prosecutor stated "I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and the beards look suspicious to me." He then further noted that juror 24 had been a witness in a supermarket robbery and had a

---

**2.** Petitioner claims: (1) he received no *Miranda* warnings; (2) there was insufficient evidence to convict him and that the trial court erred in admitting certain items of physical evidence; (3) he was convicted through use of "incredibly bad police work"; (4) the state trial court abused its discretion by considering "hearsay testimony" of the jury foreperson concerning the basis for the conviction; (5) the prosecutor introduced evidence concerning two "unknown and/or alleged" witnesses, thereby depriving petitioner of the right to confront his accusers; (6) the prosecutor engaged in improper and prejudicial argument; (7) defense counsel was incompetent; and (8) the original information charging him with robbery

in the second degree was fatally defective for failing to indicate he stole over $150.00. Slip op. at 2–3.

**3.** We recognize that some of petitioner's defaulted claims are moot in light of our reversal on *Batson* grounds. However, because some may be reasserted if petitioner is retried, we address the procedural default issue.

**4.** The prosecutor did not exercise a peremptory challenge to strike juror 16, an African–American woman.

sawed-off shotgun pointed at his face. The prosecutor stated "I didn't want him on the jury as this case does not involve a shotgun, and maybe he would feel to have a robbery you have to have a gun, and there is no gun in this case." Trial Transcript at 61.

■ In *Batson*, the Supreme Court held that purposeful racial discrimination in the jury selection process violates a criminal defendant's constitutional rights. "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his [or her] race from the jury venire on account of race, ... or on the false assumption that members of his [or her] race as a group are not qualified to serve as jurors." 476 U.S. at 86, 106 S.Ct. at 1717 (citations omitted). *Batson* requires the criminal defendant to establish a prima facie case of racial discrimination in the jury selection process by showing: (1) he or she is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire panel; and (3) these facts and any other relevant circumstances raise an inference that the prosecutor purposefully excluded the venire persons from the petit jury because of their race. *Id.* at 96, 106 S.Ct. at 1723. Once the defendant makes a prima facie showing, the burden shifts to the prosecution to come forward with a neutral explanation for the peremptory strikes. On that point, the Court further explained that blacks may not be excluded on the assumption that they, as a group, are not qualified to serve as jurors, or that they will be biased simply because the defendant is black. *Id.* at 97, 106 S.Ct. at 2245. Notably, "the prosecutor must give a 'clear and reasonably specific' explanation of his [or her] 'legitimate reasons' for exercising the challenges." *Id.* at 98 n. 20, 106 S.Ct. at 1724 n. 20 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)) (emphasis added). Finally, the trial court must ultimately decide whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at

98, 106 S.Ct. at 1724. As a practical matter, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (*Hernandez*). At that point, the only question is whether the prosecution exercised its peremptory challenge with a racial animus. The trial court's ultimate finding on this issue is to be set aside only if clearly erroneous. *Id.* 500 U.S. at 369, 111 S.Ct. at 1871.

■ Our review in the present case focuses on whether the state trial court clearly erred in its ultimate determination that the prosecution's actions were not racially motivated with respect to jurors 22 and 24. We are mindful of the presumption of correctness that is due the state courts' factual findings on habeas review. As to juror 24, we find no clear error. As to juror 22, however, we hold that a *Batson* violation did occur and reverse the district court's holding to the contrary.

The Missouri Court of Appeals and the district court both reached the conclusion that no *Batson* error occurred in this case by relying on the Missouri Supreme Court's decision in *State v. Antwine*, 743 S.W.2d 51 (Mo.1987) (en banc) (*Antwine*), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), which interpreted *Batson*.[5] *Antwine* has been cited with approval by this Court. *See Jones v. Jones*, 938 F.2d 838, 844 (8th Cir.1991). In *Antwine*, the Missouri Supreme Court commented on the legitimacy of a prosecutor's reliance on subjective grounds for exercising a peremptory challenge in the context of a *Batson* challenge. The *Antwine* court explained "we believe that *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial dis-

---

**5.** *Antwine* was decided after the petitioner's state court trial, but before this case was heard on

appeal before the Missouri Court of Appeals.

crimination is not the motive." 743 S.W.2d at 65. The court went on to explain:

> [w]e do not believe, however, that *Batson* is satisfied by "neutral explanations" which are no more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, *Batson* would be meaningless. It would take little effort for prosecutors who are of such a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced *Batson*.

*Id.*

On review of petitioner's *Batson* claim, the Missouri Court of Appeals noted that the prosecutor used less than all of his peremptory strikes to remove only two of the three African–American venire persons.[6] The state appellate court also noted that the victim was African–American, and that the state gave some explanation for the strikes. Citing *Antwine*, the Missouri Court of Appeals then concluded "[w]e believe the state's explanation constituted a legitimate 'hunch.'" *State v. Elem*, 747 S.W.2d at 775. On habeas review, the district court noted the Missouri Court of Appeals' finding of a legitimate "hunch." Giving the state courts' factual findings a presumption of correctness, the district court then concluded "[t]he record supports the Missouri Court of Appeals' finding of no purposeful discrimination." Slip op. at 8.

We believe that the Missouri Court of Appeals, and the district court on habeas review, took the Missouri Supreme Court's reference to "a prosecutor's legitimate 'hunches'" in *Antwine* out of context and, as a result, misapplied the standard intended in *Batson*. In *Antwine*, the Missouri Supreme Court recognized that a prosecutor's racially-neutral subjective intuitions may, in some circumstances, qualify as legitimate grounds for striking a prospective juror; yet the court was careful to caution "[w]e do not believe, however, that *Batson* is satisfied by

'neutral explanations' which are no more than facially legitimate, reasonably specific and clear. Were *facially neutral* explanations sufficient *without more, Batson* would be meaningless." *Antwine*, 743 S.W.2d at 65 (emphasis added).

▮ In a case such as this, where the prosecution strikes a prospective juror who is a member of the defendant's racial group, solely on the basis of factors which are facially irrelevant to the question of whether that person is qualified to serve as a juror in the particular case, the prosecution must at least articulate some plausible race-neutral reason for believing those factors will somehow affect the person's ability to perform his or her duties as a juror. In the present case, the prosecutor's comments, "I don't like the way [he] look[s], with the way the hair is cut. . . . And the mustache[ ] and the beard[ ] look suspicious to me," do not constitute such legitimate race-neutral reasons for striking juror 22.

In *Hernandez*, the Supreme Court declined to set aside the state courts' rejection of a *Batson* claim where the prosecutor struck two Spanish-speaking Latino jurors on grounds that, based upon their answers and demeanor in voir dire, he had doubts about their ability to defer to official translations during trial. The Supreme Court accepted this as a plausible race-neutral basis for the strikes. 500 U.S. at 360–64, 111 S.Ct. at 1867–68. However, the Supreme Court also observed "a policy of striking all who speak a given language *without regard to the particular circumstances of the trial or the individual responses of the jurors,* may be found by the trial judge to be a pretext for racial discrimination." 500 U.S. at 371–72, 111 S.Ct. at 1873 (emphasis added). Similarly, in *Batson*, the Supreme Court explained "[t]he prosecutor ... must articulate a neutral explanation *related to the particular case to be tried.*" 476 U.S. at 98, 106 S.Ct. at 1724 (emphasis added).

Guided by the Supreme Court's decisions in *Batson* and *Hernandez,* and our interpre-

---

**6.** The Missouri Court of Appeals found it significant that the prosecutor struck only two out of three African–American venire persons. *State v. Elem*, 747 S.W.2d at 775. We have held that

such numerical calculations are not sufficient to disprove the existence of a *Batson* violation. *See Randolph v. Delo*, 952 F.2d 243, 245 & n. 3 (8th Cir.1991) (per curiam).

tation of *Antwine,* we conclude that the prosecution's explanation for striking juror 22 in the present case was pretextual. The prosecution's explanation was "facially neutral . . . without more," which is precisely what *Antwine* cautions against. 743 S.W.2d at 65. As stated in *Hernandez,* "[t]he credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review." 500 U.S. at 367, 111 S.Ct. at 1870. We thus hold, based upon the record as a whole, that the state trial court clearly erred in finding that the prosecutor's elimination of juror 22 was not intentionally discriminatory. Accordingly, we reverse the district court's ruling to the contrary and remand this case to the district court with instructions to grant the writ of habeas corpus on the basis of the violation of petitioner's equal protection rights under *Batson.* No evidentiary hearing in the district court will be necessary.

Having concluded that petitioner is entitled to habeas relief on his *Batson* claim, we need not reach petitioner's separate due process claim related to the apparent "joint" found by the jury in the gray sweatsuit. Presumably that inadvertent discovery will not recur if petitioner is retried, and the issue will become moot.