Jimmy ELEM, Appellant,

v.

James PURKETT, Appellee.

No. 93–1793.

United States Court of Appeals,
Eighth Circuit.

Submitted June 28, 1995.

Decided Sept. 1, 1995.

David E. Woods, argued, O'Fallon, MO, for appellant.

Ronald L. Jurgeson, Asst. Atty. Gen., argued, Kansas City, MO, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

On May 15, 1995, the United States Supreme Court granted James Purkett's petition for a writ of certiorari in the present case. That same day, the Supreme Court issued an opinion reversing this court's judgment and remanding the case for further proceedings. *Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), *rev'g and remanding* 25 F.3d 679 (8th Cir.1994), *rev'g* No. 4:92CV1927 (E.D.Mo. Feb. 18, 1993). Consistent with the Supreme Court's instructions, we now affirm the order of the district court.

Jimmy Elem (petitioner) brought this habeas action in federal district court pursuant to 28 U.S.C. § 2254. In July of 1986, petitioner was convicted of second degree robbery following a jury trial in Missouri state court. The underlying offense involved an assault and robbery of an African American woman who identified her assailant as an African American man with "french-braided" hair and wearing a gray sweatsuit. Petitioner, who fit the description of the robber, was apprehended near the scene of the robbery. The victim identified him as her assailant. During jury selection, petitioner objected to the prosecutor's use of peremptory challenges to strike two African American men from the jury panel, (jurors 22 and 24). The prosecutor indicated that his reasons for the strikes were, in part, based upon the prospective jurors' appearance. The state trial court overruled the objection. At trial, a gray sweatsuit was admitted into evidence.

The victim identified the sweatsuit as the one worn by her assailant.[1] During deliberations, the jury inadvertently discovered what appeared to be a marijuana cigarette, or "joint," in the sweatsuit. Petitioner moved for a mistrial on grounds that the "joint" was evidence of a crime for which petitioner had not been charged. The trial court denied the motion. After the jury returned a verdict of guilty, petitioner moved for a new trial on the same grounds. The state trial court heard testimony of the jury foreperson, who stated that the jury placed no emphasis on the "joint" in its deliberations. The trial court denied petitioner's motion for a new trial.

Petitioner was sentenced as a persistent offender and received a twenty-five year sentence. He appealed his conviction asserting two grounds: (1) the prosecutor's use of peremptory challenges to strike two African Americans from the venire panel violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*); and (2) the jury's inadvertent discovery of the "joint" in the gray sweatsuit violated his due process rights. The Missouri Court of Appeals affirmed his conviction. *State v. Elem,* 747 S.W.2d 772 (Mo.Ct.App.1988). Petitioner did not bring a state court action seeking post-conviction relief. He next filed a petition for writ of habeas corpus *pro se* in federal district court. The matter was referred to a United States magistrate judge,[2] who recommended that the petition be denied without a hearing. *Elem v. Purkett,* No. 4:92CV1927 (E.D.Mo. Jan. 19, 1993) (report and recommendation). The district court[3] adopted the magistrate judge's report and recommendation and denied the petition. *Id.* (Feb. 18, 1993) (order). On appeal, we affirmed the order of the district court in part, reversed with respect to petitioner's *Batson* claim, declined to reach his due process claim, and remanded with instructions to the district court to grant the habeas petition.

*Batson claim*

◼ In addressing petitioner's claim of *Batson* error, our original panel opinion followed the traditional three-step *Batson* analysis and concluded, with respect to the second step, that the prosecutor failed to meet his burden of production under *Batson* as a matter of law when he stated reasons for striking juror 22 from the venire panel that were facially race-neutral, yet bore no relation to the particular case to be tried or to the person's ability to perform the duties of a juror. *Elem v. Purkett,* 25 F.3d at 681–84. At petitioner's underlying criminal trial, the prosecutor gave his reasons for striking juror 22 as follows:

> I struck number twenty-two because of his long hair. He had long curly hair. He had the longest hair of anybody on the panel by far. He appeared to me to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkept hair. Also, he had a mustache and a goatee type beard.

Tr. at 61. Referring to both jurors 22 and 24, the prosecutor further stated:

> And I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and beards look suspicious to me.

*Id.* In reversing our decision, the Supreme Court stated "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771 (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.* at 374, 111

---

1. At the time petitioner was apprehended by the police, he was wearing cut-off blue jeans and a T-shirt, and the sweatsuit was found underneath a nearby parked car.

2. The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

3. The Honorable Jean C. Hamilton, Chief United States District Judge for the Eastern District of Missouri.

S.Ct. at 1874 (O'Connor, J., concurring in judgment)). From that determination, the Supreme Court concluded "[t]he prosecutor's proffered explanation in this case—that he struck juror number 22 because he had long unkempt hair, a mustache, and a beard—is race-neutral and satisfies the prosecution's step 2 burden of articulating a nondiscriminatory reason for the strike." *Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771.

In reaching this conclusion, the Supreme Court rejected our analysis as follows.

The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson*, 476 U.S., at 98, n. 20, 106 S.Ct., at 1724, n. 20 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)), and that the reason must be "related to the particular case to be tried," 476 U.S., at 98, 106 S.Ct., at 1724. *See* 25 F.3d, at 682, 683. This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. *See Hernandez, supra*, at 359, 111 S.Ct., at 1866; *cf. Burdine, supra*, at 255, 101 S.Ct., at 1094 ("The explanation provided

must be legally sufficient to justify a judgment for the defendant").

*Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771. Thus, notwithstanding the express language in *Batson* that "the prosecutor ... must articulate a neutral explanation *related to the particular case to be tried*," 476 U.S. at 98 (emphasis added), prosecutors now need *only* state a reason that is neutral or, in other words, not inherently discriminatory, regardless of whether it makes sense. *Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771. The reason may be "implausible or fantastic," even "silly or superstitious," [4] and yet still be "legitimate." *Id.* However, the explanation cannot be a mere denial of racial motive or mere affirmation of good faith. *Id.*[5] In sum, if the reason is facially race-neutral, it must be deemed sufficient at this second stage, even if it bears no relation whatsoever to the case to be tried or the person's ability to serve as a juror. Accordingly, we now hold, in the present case, that the prosecutor's reason for striking juror 22, that he had long unkempt hair, a mustache, and a beard, satisfied the prosecutor's burden of production.

■ The ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike. *Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1771. Therefore, at the third and final stage of the analysis, the trial court must decide whether the criminal defendant has proven intentional racial discrimination. At this stage, the persuasiveness of the prosecutor's justification becomes relevant, and the trial court may consider wheth-

---

**4.** This quoted language calls to mind the observation that "'great' cases, like 'hard' cases, make bad law," and so, too, do "silly cases." *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 127–28, 103 S.Ct. 505, 513, 74 L.Ed.2d 297 (1982) (Rehnquist, J., dissenting).

**5.** The Supreme Court indicates that the "warning" in *Batson* that the reason must be related to the particular case to be tried "was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). However, with all due respect, we fail to see how the statement by a prosecutor "I am acting in good faith" is any *less* related to the particular case to

be tried than the statement "the juror has a beard." The problem, analytically, with allowing a prosecutor merely to deny having a discriminatory motive or to affirm good faith, when the prosecutor has the burden of producing reasons for his or her actions, is *not* that such statements are unrelated to the case. (In fact, such statements are just as related to the case as statements like "the juror has a beard," if not more so.) Rather, the real problem with allowing the prosecutor to rely on such bald affirmations or denials is that they fail to state any reasons at all. Such statements are no different from the prosecutor saying "my reasons are legitimate," or "my actions are not racially motivated" which, of course, does nothing more than provide an unsubstantiated self-serving answer to the question before the trial court.

er the reasons given for the strike are genuine or merely pretexts for purposeful discrimination. *Id.* at ——, ——, 115 S.Ct. at 1771, 1772. "At [this] stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id.* at ——, 115 S.Ct. at 1771. The trial court's decision on the ultimate question of discriminatory intent is a finding of fact. *Hernandez,* 500 U.S. at 364, 111 S.Ct. at 1868–69. "In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'" *Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771 (citing 28 U.S.C. § 2254(d)(8); *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983)). Thus, absent procedural error, we are permitted under § 2254 to set aside the state court's finding of no racial motive only if the finding is not fairly supported by the record. *Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771.

**6.** As a result of this impasse, the state trial court essentially held that petitioner failed to establish a prima facie case. *See Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1774 (Stevens, J., dissenting) ("[T]he only finding the trial judge made was that the defendant had failed to establish a prima facie case. Everyone now agrees that finding was incorrect.")

**7.** The entire side bar discussion regarding petitioner's objection to the jury composition took place as follows.

(Counsel approached the bench and the following proceedings were had:)
MR. GOULET: Your Honor, the defendant at this time would make the motion that this is not a jury of the defendant's peers and that—
THE COURT: This is the jury you have selected?
MR. GOULET: That the State has struck—
THE COURT: Let me get you on the record, this is the jury you have selected?
MR. GOULET: Yes, it is, your Honor.
THE COURT: All right.
MR. GOULET: The State has made preemptory strikes of two of the three eligible blacks on this jury panel. And, therefore, we consider that prejudice to the defendant's case.
THE COURT: Well, I don't know whether or not the State has struck whites or blacks, because I have no recollection of the color of any of their strikes. But, Mr. Larner, you may want to respond to that.

■ At the underlying state trial in the present case, the trial court did not follow a three-step burden shifting process. Accordingly, the state trial court never made any express factual finding as to whether the prosecutor's peremptory strike of juror 22 was motivated by purposeful discrimination. When petitioner's counsel objected to the prosecutor's use of peremptory strikes to eliminate jurors 22 and 24, the trial judge noted, and then the prosecutor argued, that there was no evidence that jurors 22 and 24 were in fact African American. The prosecutor nonetheless stated that he struck jurors 22 and 24 because of their mustaches and beards, which "look[ed] suspicious," and because of their hair, which the prosecutor "[didn't] like." Tr. at 61. Responding to the trial court's comment and the prosecutor's responsive argument, the defense attorney requested that the court either allow him to ask the two jurors if they were black or take judicial notice of the fact that they were black, in order to establish a record of the jurors' race. The trial court responded, "I am not going to do that, no, sir." [6] Tr. at 62.[7]

MR. LARNER: Well, that there has been no finding that I struck in that regard, I don't have to respond. However, I will respond, because it is an inaccurate statement by the defense. There appears to me, as I look at the jury right now, that there are black people on the jury which I did not strike. Mr. Goulet is saying that I struck jurors that were black, he said two of three. I don't believe there is any record to indicate how many black people there were on the panel before we started. But to respond to this, I don't know which jurors he is referring to that he says that I struck.
MR. GOULET: May I get my jury list?
THE COURT: You may do so.
MR. GOULET: In the first twenty-five venire people three were black. The first being Ms. Kemp–Jones, number sixteen. The second one being Mr. Tommy Moody, number twenty-two. And the third being Mr. William Hunt, number twenty-four. Those were the available panel and the State has struck two out of those three. Those being number twenty-two, Tommy Moody, and number twenty-four, William Hunt.
MR. LARNER: In response, your Honor, I don't think there has been any evidence that any statements by the people on the voir dire as to whether or not they were black. I think that he is referring to, he says number sixteen, number twenty-two, and number twenty-four. I don't know if all three of those people are, in fact, black. There has been no testimony to

Thus, as noted by the Supreme Court, the state trial court simply overruled petitioner's objection without explanation and empaneled the jury. *See Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1770.

"The section 2254(d) presumption of correctness only applies to factual determinations made after a hearing on the merits and 'evidenced by a written finding, written opinion, or other reliable and adequate written indicia.'" *Jones v. Jones,* 938 F.2d 838, 842 & n. 7 (8th Cir.1991) (quoting 28 U.S.C. § 2254(d)). In *Jones v. Jones,* this court considered whether the state trial court had made a factual finding of purposeful discrimination, subject to § 2254 review, when the state trial court conducted a *Batson* hearing and then simply declared the petitioner's *Batson* motion "overruled." 938 F.2d at 842. We held that no such factual finding had been made because "[t]here is a fundamental difference between a ruling on a motion, essentially a legal determination, and a find-

ing of fact." *Id.* However, we went on to hold, in *Jones v. Jones,* that the Missouri Court of Appeals had made two factual findings that were subject to review under § 2254(d): (1) that the record on direct appeal supported the prosecution's assertion that the reasons provided for exercising the challenges in question were, on their face at least, neutral and not frivolous [8]; and (2) that the petitioner made no attempt to persuade the trial court that the reasons proffered by the prosecutor were merely a pretext for discrimination. *Id.* at 843.

In the present case, the Supreme Court instructs us to reevaluate, under the proper § 2254(d) standard, "the state court's finding of no racial motive." *Purkett v. Elem,* —— U.S. at ——, ——, 115 S.Ct. at 1771, 1772. Guided by *Jones v. Jones,* we assume that the Supreme Court, in implicitly holding that there was a state court factual finding of "no racial motive," was referring to a finding by the Missouri Court of Appeals. The Su-

that and the fact now whether or not they are what he said was inaccurate, because number sixteen I did not strike, that's a female.

MR. GOULET: I think my statement was that he struck two out of three. That's not inaccurate, he kept one.

MR. LARNER: Your Honor, I don't know that there is any evidence that there were three on the panel. Now, I am saying that Shaun Goulet just said there was number sixteen, number twenty-two and number twenty-four, that he is assuming are black. Those are the three he mentioned. I did not strike number sixteen. I struck number twenty-two because of his long hair. He had long curly hair. He had the longest hair of anybody on the panel by far. He appeared to me to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkept hair. Also, he had a mustache and a goatee type beard. And juror number twenty-four also has a mustache and a goatee type beard. Those are the only two people on the jury, numbers twenty-two and twenty-four with facial hair of any kind of all the men and, of course, the women, those are the only two with facial hair. And I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and the beards look suspicious to me. And number twenty-four had been in a robbery in a supermarket with a sawed-off shotgun pointed at his face, and I didn't want him on the jury as this case does not involve a shotgun, and maybe he would feel to have a robbery you have to have a gun, and there is no gun in this case.

MR. GOULET: May I respond, your Honor?

THE COURT: Yes.

MR. GOULET: Mr. Larner stated that the reason he struck was because of facial hair and long hair as prejudicial. Number twenty-four, Mr. William Hunt, was a victim in a robbery and he stated that he could give a fair and impartial hearing. To make this a proper record if the Court would like to call up these two individuals to ask them if they are black or will the Court take judicial notice that they are black individuals?

THE COURT: I am not going to do that, no, sir.

MR. GOULET: Okay. Nothing further.

MR. LARNER: Your Honor, I will state and ask the court to look at the first twenty-four people on the jury panel that numbers twenty-two and twenty-four are the only people with facial hair, that is, a mustache or a beard. And twenty-two and twenty-four both have mustache and beard.

THE COURT: All Right.

(The proceedings returned to open court.) Tr. at 58–62.

**8.** By contrast to the present case, the validity of the reasons that had been stated by the prosecutor at the underlying criminal trial was not in dispute on habeas review in *Jones v. Jones,* 938 F.2d 838 (8th Cir.1991); in fact, our opinion in that case does not even reveal what those stated reasons were.

preme Court appears to have seized upon the following statement of the Missouri Court of Appeals: "[w]e believe the state's explanation constituted a legitimate 'hunch'.... The circumstances fail to raise the necessary inference of racial discrimination, and the [trial] court did not err in denying [petitioner's] objection to the panel." *State v. Elem*, 747 S.W.2d at 775 (citation omitted) (cited in part in *Purkett v. Elem*, —— U.S. at ——, 115 S.Ct. at 1770).[9]

It is undisputed in the present case that after the prosecution offered its reasons for striking jurors 22 and 24, petitioner made no attempt to persuade the trial court that the prosecutor's reasons for striking juror 22 were merely a pretext for purposeful discrimination. *See* Tr. at 61–62. In *Jones v. Jones*, we concluded that the petitioner was not entitled to habeas relief on his *Batson* claim because

> [a]fter the prosecutor offered his explanations, the factual inquiry rose to a new level of specificity.... [T]he burden of persuasion remained with [the petitioner], and [the petitioner] had an opportunity to argue that the prosecutor's facially neutral explanations were merely a pretext for discrimination.
>
> The transcript confirms that once the prosecution gave his reasons for striking each of the six jurors, [the petitioner's] attorney offered no additional argument, but only moved to quash the jury. The trial court was not required to consider pretext when the issue was not raised.

938 F.2d at 844 (citation to Missouri case law omitted).

In the present case, we now hold that, because the prosecutor proffered reasons for striking juror 22 that were facially race-neutral, and petitioner made no attempt to per-

suade the state trial court that the prosecutor's reasons for striking juror 22 were merely a pretext for purposeful discrimination, the trial court's finding of no racial motive is fairly supported by the record, and petitioner is not entitled to habeas relief on his *Batson* claim.

## Due process claim

■ Having found no grounds for habeas relief on petitioner's *Batson* claim, we must also now consider petitioner's separate due process claim. During the jury's deliberations at petitioner's state criminal trial, one of the jurors told a bailiff that a "joint" had been discovered in a gray sweatsuit that had been admitted into evidence. Upon learning of the discovery, petitioner moved for a mistrial on grounds that the "joint" was evidence of a crime with which he had not been charged. The state trial court denied petitioner's motion, finding that petitioner suffered no prejudice as a result of the jury's consideration of the item. After the jury returned a guilty verdict, the defense moved for a new trial on the same basis. The state trial court held a hearing at which the jury foreperson testified that no emphasis was placed on the item during the jury's deliberations. The motion for a mistrial was denied. The Missouri Court of Appeals affirmed the trial court's denial of petitioner's motion for a mistrial finding no prejudicial error. *State v. Elem*, 747 S.W.2d at 775. On review, the magistrate judge carefully considered the record, including the testimony of the jury foreperson. The magistrate judge concluded that the state court's finding of no prejudice was amply supported by the record and therefore entitled to the presumption of correctness under 28 U.S.C. § 2254(d). We agree.

For the foregoing reasons, we affirm the

---

9. We note that the Missouri Court of Appeals rationalized its findings in part on grounds that the prosecutor struck only two of the three African American venirepersons and that those three persons constituted only twelve percent of the total venire panel. *State v. Elem*, 747 S.W.2d

772, 774–75 (Mo.Ct.App.1988). We have since held, however, that such numerical calculations are not sufficient to disprove the existence of a *Batson* violation. *See Randolph v. Delo*, 952 F.2d 243, 245 & n. 3 (8th Cir.1991) (per curiam), *cert.*

order of the district court.[10]

*denied,* 504 U.S. 920, 112 S.Ct. 1967, 118 L.Ed.2d 568 (1992).

**10.** In our prior panel opinion, we affirmed the district court's holding that eight of petitioner's claims in his habeas petition were barred by procedural default which was neither excused by cause and prejudice nor amounting to a fundamental miscarriage of justice. 25 F.3d at 681 & n. 2. That part of our disposition has not been reversed by the Supreme Court.