DENNIS, Circuit Judge,
dissenting:
When Moody’s state trial counsel made a Batson objection to the state prosecutor’s peremptory challenge of a black juror, the state trial court cut him off at the knees, ruling sua sponte that Moody did not have standing to object because Moody is white. Undisputedly, the state trial court’s no-standing decision was contrary to the rule of federal law clearly established by the Supreme Court in Powers v. Ohio. 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that under the Equal Protection Clause, a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded jurors share the same race).
The state trial court’s ruling foreclosed any opportunity for: (1) Moody to make a prima facie showing of discrimination; (2) the State to make a valid proffer of a race-neutral basis for the challenge; or (3) Moody to show that the State’s proffer would have been pretextual and that the challenge was race-based. Thus, the state trial court’s immediate, sua sponte ruling *273 also precluded the making of a record from which an appellate court could reasonably make a factual finding of racial discrimination vel non or a determination that the legal errors and omissions were harmless.
All this is evident from the unbroken train of events that rapidly followed Moody’s objection to the peremptory challenge: (1) the trial court immediately ruled sua sponte that Moody did not have standing to object; (2) defense counsel noted his exception to the court’s ruling; (3) the trial court excused the black juror from further jury service; (4) the prosecutor agreed with and accepted the benefit of the trial court’s no-standing ruling, but interjected a reference to his reasons for the strike, stating that “[i]n addition to that, if it be needed — probably doesn’t need to — ... the records of the two brother-in-laws [of the juror], one robber and one dope pusher, and he says they can be rehabilitated, even though they have been up twice before ...and (5) the trial court signified his insistence on his no-standing ruling and sustained the prosecutor’s peremptory challenge by directing that the black juror be told that he was “free to go” and thereby released from further jury duty.
The district court correctly determined that a writ of habeas corpus must be granted because (1) the state trial court unquestionably violated the clear, firm rule of Powers by holding that Moody lacked standing to object to the race-based exclusion of a black juror through peremptory challenge because Moody “is white ... [and] not part of any racial minority”; (2) the state trial court compounded its Powers error by also violating the clearly established rules of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it failed to conduct any of the three steps required by Batson after Moody objected that the state prosecutor had used a race-based peremptory challenge to exclude a black juror; (3) the Texas Court of Criminal Appeals (“CCA”), despite its recognition that the state trial court’s decision was contrary to Powers, acted contrary to or unreasonably applied Batson by purporting to find as a fact that the prosecution’s peremptory challenge had not been based on racial discrimination, although the record before it was completely devoid of any semblance of the state trial court’s compliance with any of the three clearly established steps and procedures required by Batson.
The majority scouts for a way to say that the CCA’s decision, although flatly contrary to Batson, was not unreasonable. But each theory it advances is itself contrary to or an unreasonable application of those clearly established Supreme Court holdings. First, the majority vaguely suggests that the collection of decisions related to Purkett v. Elem is a reasonable basis to think that a state appellate court might decide a Batson challenge originally and ab initio despite the trial court’s failure to undertake any of the three steps. See Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Elem v. Purkett, 64 F.3d 1195 (8th Cir.1995); State v. Elem, 747 S.W.2d 772 (Mo.Ct.App.1988). But the Elem gestalt is diametrically different and inapposite at every juncture: there, after the trial court accepted the defendant’s prima facie showing and the prosecution’s making of a valid race-neutral proffer, the defendant failed to prove that the proffered reason was a pretext for racial discrimination. Elem affirms and follows Batson. Here, contrary to the Elem decisions, as the majority repeatedly admits, Moody was not allowed to broach any of the Batson phases; and the prosecutor’s interjection, coming after he agreed that Moody lacked standing to complain about the State’s racially based perempto-ries, was tacitly but clearly rejected by the *274 trial court as an invalid and unnecessary-proffer. Second, the majority’s notion that in the state appellate court Moody somehow waived his right to object to race based peremptories that he was denied the standing to assert in the trial court is also incorrect. Neither the CCA opinion nor the State’s briefs there or here even hint at a waiver, as the majority in effect holds, in the sense of an express or implicit failure to avail oneself of a known right or to assert a claim, and the majority’s opinion presents no reasonable basis for supposing that Moody somehow declined to assert his Batson claim in the CCA while at the same time complaining vigorously that he had been denied standing to assert it below.
In my opinion, Powers and Batson clearly establish that Moody had standing to object to the peremptory challenge, to make a prima facie case and to prove racial discrimination on the merits in the trial court, and Batson unmistakably does not allow a state'appellate court to make the factual determination of racial discrimination in peremptory challenges vel non in the absence of a record of such a previous finding by the trial court. In Batson, the Supreme Court applied by analogy from its equal protection jurisprudence a burden-shifting framework for the analysis of objections to peremptory strikes as discriminatory. It established a three-step analysis: first, the defendant must make a prima facie showing that the peremptory challenge was racially motivated; second, the prosecutor must then articulate a race-neutral reason for the strike; and third, the trial court must determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. Batson noted that at the third step, “[sjince the trial judge’s findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.” Id. at 98 n. 21, 106 S.Ct. 1712. Batson involved a virtually identical fact pattern, and the court remanded to the trial court “[bjecause the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action.” Id. at 100, 106 S.Ct. 1712.
Batson plainly does not authorize an appellate court to take evidence or to act as the initial fact-finder regarding whether a peremptory challenge was racially motivated. Nor does it allow appellate judges to speculate as to what would have happened in the absence of the trial court’s Batson error or to hypothesize a record for review in a case in which the trial court failed to make findings as to whether the defendant made out a prima facie case of racial discrimination, whether the prosecution had proffered a race neutral explanation, and whether the defendant prevailed on the ultimate issue of intentional racial discrimination. In the final analysis, the CCA’s decision in the present case is, at best, a review of a hypothesized three-step inquiry that was never made by the state trial court, or, at worst, rank speculation that the prosecutor’s uninvited, unaccepted, and untraversed faux-proffer concerning Hightower’s brothers-in-law must have been the true basis for the prosecutor’s peremptory challenge.
Nothing in AEDPA or the Supreme Court’s jurisprudence reasonably supports the CCA in making credibility calls on peremptory challenges against black jurors based on a trial record devoid of evidence, traverse, contradictory hearing, or judicial questioning. It was well settled prior to AEDPA that, in habeas corpus proceedings in federal courts, the factual findings of state courts were presumed to be correct, but that the presumption was rebuttable and the findings could be set aside if they were “ ‘not fairly supported by the record.’ ” Purkett, 514 U.S. at 769, *275 115 S.Ct. 1769 (citing 28 U.S.C. § 2254(d)(8); Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). Under this rebuttable presumption rule, it was not material that the factual findings were made by a state reviewing court rather than a trial court. See Sumner v. Mata, 455 U.S. 591, 592-93, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); Sumner v. Mata, 449 U.S. 539, 546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).
However, the Supreme Court held that although the Sumner cases established that the presumption applies to facts found by appellate as well as trial courts, there were instances in which the presumption would not arise with respect to appellate fact-finding — for example, in a case which turned on credibility determinations that could not be accurately made by an appellate court on the basis of a paper record. See Cabana v. Bullock, 474 U.S. 376, 388 n. 5, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986) (citing Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Wainwright v. Witt, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).
In Childress v. Johnson, 103 F.3d 1221, 1226 n. 7 (5th Cir.1997), this court held that AEDPA retained the traditional presumption of correctness afforded to state court factual determinations, id. at 1225 (citing 28 U.S.C. § 2254(e)(1)), but that the presumption continues to be rebuttable because, post-AEDPA, “[sjection 2254(d)(2) authorizes issuance of the writ if the state court decision ‘was based on an unreasonable determination of the facts in light of the evidence presented.’ ” Id. at 1226 n. 7. Consequently, section 2254(d) does not require this court to defer to the CCA’s finding of fact exonerating the State of racial bias in striking Hightower, the black juror. That finding lacks support in the record and was thus an “unreasonable determination of the facts in light of the evidence.” Id. Moreover, that unsupported finding appears to have been designed to improperly shield and excuse the trial court’s clear violation of the constitutional requirements set forth in Batson and Powers.
The trial court in this case never initiated the Batson inquiry, and the record does not contain even á first-step analysis. Rather, the trial court refused to consider the issue on the ground that Moody lacked standing to make the objection. We have previously described Batson findings by the trial court as a “prerequisite for proper appellate review.” United States v. Romero-Reyna, 889 F.2d 559, 560 (5th Cir.1989). The Supreme Court has made the importance of these findings taking place at the trial court level plain in Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), which held that:
In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies “peculiarly within a trial judge’s province.” Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), citing Patton v. Yount, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).
The trial court’s Powers error here led it to default completely on its duty under Batson to make a three-step analysis. The CCA here attempted to conduct the third step of the Batson analysis on its own, despite the Supreme Court’s admoni *276 tion in Hernandez that this role was peculiarly within the trial judge’s province and despite the trial judge’s failure to make findings as to any of the three steps. It based its findings on a cold, woefully incomplete record and an uninvited, equivocal, unaccepted and unexamined proffer of a race-neutral reason by the prosecutor. It had no opportunity to observe the demeanor of the prosecutor, described by Hernandez as often the “best evidence” in this situation. The CCA was required to remand for a three-step analysis as per Batson, and to do anything else was contrary to or an unreasonable application of Batson.
Finally, while Moody may not have gone outside of the trial court record before the CCA to identify a particular aspect of the prosecutor’s demeanor which suggested racial motivation in this case, as the majority surmises, this does not detract from the general rule that an appellate court errs by attempting to make a credibility determination at the appellate level on a cold or hollow record.
Subtle and nonverbal cues such as a wink, a glance, or a brief hesitation are often perceived by a fact-finder only indirectly and subconsciously. The rule requiring that it be a trial judge who scrutinizes the demeanor of a witness is in place precisely because these cues would be difficult, if not impossible, to identify on appeal. “A transcript cannot reveal tone, speech inflections, mood and other indicia of a mental state and certainly cannot pick up subtle but crucial changes in [the prosecutor’s] demeanor.” Bruce v. Estelle, 536 F.2d 1051, 1062 (5th Cir.1976). Moreover, such an appellate credibility determination based on a trial court record devoid of judicial inquiry, contradictory hearing or evidence is patently devoid of fairness and due process.
Moody plainly preserved this argument by, at the first available opportunity in his briefs to the federal district court, arguing that a “[tjrial judge at least might recall the demeanor of the prosecutor and prospective jurors while reviewing the record. The CCA absolutely could not.” After citing law to the effect that only a trial court may make in-person credibility assessments,[1] Moody argued that “the TCCA did not, and could not, make an ‘in person credibility assessment,’ and there was no such assessment in front of it for review. This means, the TCCA could not make a reasonable assessment of racial discrimination vel non”
The majority’s further contention that Moody failed to argue that the prosecutor’s stated reasons for striking Hightower were pretextual is also troubling. First, Moody was not required to make such an argument, considering the trial court’s clear legal errors in its ruling and proceedings contrary to Powers and Batson. Second, Moody’s briefs to the district court certainly made this argument anyway, flatly stating that “[t]he record of individual voir dire proves, however, that the prose-eution[’s] explanation for its strike was pretextual.” Moody pointed both to statistical evidence of a disproportionate number of black jurors being struck from the venire in this case and to several white jurors who Moody argues stated similar views and yet were not struck by the prosecutor. While Moody’s briefs before the CCA did not detail the reasons why Moody believed the strike of Hightower to be pretextual, this failure certainly does not amount to a waiver, as implied by the majority. In response to Moody’s briefs *277 identifying a clear error and requesting remand (which the majority concedes is the appropriate remedy), the CCA on its own initiative chose to engage in appellate fact-finding. Moody could hardly have been expected to foresee and brief this sua sponte action by the court. Furthermore, we cannot state with certainty that Moody did not challenge the strike as pretextual because the record on appeal does not contain a transcript of any oral proceedings before the Texas Court of Criminal Appeals and contains no indication that an evidentiary hearing was held prior to the appellate fact-finding. We have no indication that Moody was ever permitted to offer evidence that the strike was pretex-tual, as he requested of the district court. In fact, it appears that this appellate finding of fact was made without an evidentia-ry hearing — which, given the refusal of the trial court to allow the Batson inquiry to proceed to even the first step, gave Moody no opportunity to meet his burden at the unreached third step by introducing evidence challenging the State’s backhanded proffer of a reason for the strike as pretex-tual.
The burden of proving any waiver by Moody of his arguments lies on the State. See, e.g., 31 C.J.S. Estoppel and Waiver § 213 (2006) (“The burden of proving waiver is on the party claiming or asserting it, or alleging and relying on it, or raising an issue as to it.”). The State’s brief to the district court describes the facts as if no evidentiary hearing ever occurred, arguing in a footnote that the only “hearing” necessary for a state appellate court to make a finding of fact is to allow the parties opportunity for written and oral argument. The State’s briefs before us contain no allegation of waiver and do not give us any indication as to whether oral argument occurred in the CCA or what was said at any hearing. We cannot, on the incomplete record before us and on our own initiative, presume a waiver. Moody’s first opportunity to challenge the CCA’s sua sponte effort to reach the. third step of the Batson inquiry was before the district court, and it is plain that he argued there that the state’s proffered reason was pre-textual.
For these reasons, I respectfully dissent from the majority’s reversal of the district court’s judgment. Ordinarily, I believe a remand to re-conduct the Batson analysis is the most appropriate remedy. However, in this case the hearing took place over a decade ago, and the prosecutor has submitted an affidavit stating that he does not remember the reasons motivating his strike and could not now testify to them. On these circumstances, I cannot say that the district court erred in ordering a new trial. See Barnes v. Anderson, 202 F.3d 150, 157 (2d Cir.1999) (ordering a new trial instead of a hearing on the Batson issues because the passage of time and an incomplete record made a hearing unlikely to allow a reliable analysis of the voir dire); Riley v. Taylor, 277 F.3d 261, 293 (3d Cir.2001) (holding that the passage of time rendered remand for a Batson hearing inappropriate as a remedy and that “statistical evidence, which might be the subject of some analysis at such a hearing, is relevant but not dispositive to our decision” and could not alone justify a remand over a new trial); Brown v. Kelly, 973 F.2d 116, 121-22 (2d Cir.1992) (holding that, by contrast, an evidentiary hearing was a more appropriate remedy where the prosecutor testified that he vividly remembered his reasons for striking the jurors and testified about them in detail, the defense counsel had contemporaneous notes taken at the voire dire, and only six years had passed).
For these reasons, I respectfully dissent.

. See United States v. Montgomery, 210 F.3d 446, 453 (5th Cir.2000) (citing United States v. Wallace, 32 F.3d 921, 925 (5th Cir.1994)).