United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 17, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 02-21245

STEPHEN LINDSEY MOODY,

Petitioner-Appellee,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and STEWART and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The Director of the Texas Department of Criminal Justice, Nathaniel Quarterman ("the State"), appeals from the district court's provisional grant of habeas relief in favor of Stephen Lindsey Moody ("Moody"). Moody filed the underlying petition for habeas relief asserting ineffective assistance of counsel and violation of his equal protection rights pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court denied relief on Moody's ineffective assistance of counsel claims and denied his request for a COA; however, the court granted Moody's request for habeas relief

based on his *Batson* claim. The district court held that the Texas trial court improperly denied Moody's request for a *Batson* challenge to contest the State's use of peremptory strikes during jury voir dire. The district court reasoned that the Texas trial court failed to properly apply the Supreme Court's holding in *Powers v. Ohio*, 499 U.S. 400 (1992). Because we conclude that the district court failed to give proper deference to the Texas Court of Criminal Appeals' findings of fact pursuant to 28 U.S.C. § 2254, the order granting Moody's petition for habeas corpus on his equal protection claim is VACATED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Proceedings in the District Court

Because our review of this appeal pertains solely to the issue of whether the Texas trial court and the Texas Court of Criminal Appeals committed reversible error in failing to allow Moody's *Batson* challenge, we limit our recitation of the facts and proceedings to those germane to the resolution of that issue.

In 1993, Moody was indicted on a charge of capital murder for the death of Joseph Franz Hall. The death occurred during the commission of a botched armed robbery in 1991. A jury subsequently found Moody guilty of the offense in 1993. After answering Texas's special issues in the affirmative during a separate punishment phase of the trial, the jury sentenced Moody to death by lethal injection.

During voir dire, the State used four of its thirteen peremptory challenges to strike four out of eight (50%) of the African-Americans on the venire. Moody objected to one of those strikes when the State used a peremptory strike to exclude Jerome Hightower. At the close of the voir dire, Moody requested a *Batson* hearing to challenge the propriety of the State's exclusion of Hightower. The trial

2

judge denied Moody's request, explaining that because Moody was white he had no standing to raise a *Batson* equal protection claim when the excluded venireperson was of a different race. The State agreed with the state trial court's reasoning, but nevertheless volunteered a race-neutral explanation for its striking of Hightower; mainly, that Hightower had two brothers-in-law in prison. The State argued that Hightower's family circumstances would have adversely affected his beliefs concerning whether a defendant could be rehabilitated by a long prison sentence. Disregarding Moody's request for a *Batson* hearing, the trial court dismissed Hightower without conducting any step of the three-part *Batson* analysis, solely on the basis that Moody had no standing to challenge the striking of a black juror.

On direct appeal to the Texas Court of Criminal Appeals, Moody raised seven claims of error, including the equal protection claim at issue here. Moody argued that the state trial court failed to conduct a *Batson* hearing as he requested in violation of the Supreme Court's decision in *Powers v. Ohio*, which has long since resolved the issue of whether a defendant could raise a *Batson* claim to contest the State's use of a peremptory strike when a venireperson is of a different race from the challenging defendant. In 1996, the Texas Court of Criminal Appeals affirmed Moody's conviction and sentence, stating that although the state trial court improperly failed to conduct a proper *Batson* hearing, the prosecutor's race-neutral proffer was sufficient for a lawful exclusion of Hightower and that the prosecutor did not strike Hightower because of his race. *Moody v. State*, No. 71, 687 (Tex. Crim. App. Jan. 17, 1996) (unpublished).

In 1997, Moody filed an application for a state writ of habeas corpus in the Texas trial court. Moody did not assert his *Batson* claim in his state habeas petition. In 1999, the state trial court denied Moody's request for habeas relief and entered findings of fact and conclusions of law in support of

3

its ruling. The Texas Court of Criminal Appeals denied relief holding that the trial court's findings of fact and conclusions of law were supported by the record. *Ex parte Moody*, No. 71,687 (Tex. Crim. App. Nov. 3, 1999) (unpublished).

Moody subsequently petitioned for habeas relief in federal court. Moody raised the same claims he raised on direct appeal–two ineffective assistance of trial counsel claims and the equal protection claim at issue here. The State filed a motion for summary judgment, and Moody filed a cross motion for summary judgment. The district court granted summary judgment to the State on Moody's ineffective assistance of counsel claim and denied Moody's request for a COA;[1] however, it ordered additional briefing on the equal protection issue, including evidence and arguments as to the proper remedy that should be ordered to rectify the error, i.e., whether it should issue an order of remand to conduct a proper *Batson* hearing or an order of remand for a new trial.

In a renewed motion for summary judgment, the State argued that the state trial court's decision denying Moody's request for a *Batson* hearing should be affirmed because (1) the erroneous ruling did not prevent Moody from fully developing his *Batson* claim in the state trial court; (2) Moody did not establish a prima facie case of discrimination; and (3) Moody did not meet his burden of establishing discriminatory intent. In response to the State's arguments the district court concluded that:

> [w]ell after the Supreme Court had ruled on the issue [of the irrelevance of a prospective juror's race when a defendant raises a *Batson* claim,] the trial court committed the error denounced by *Powers*. The trial court abdicated its duty to make an inquiry into alleged racial discrimination by failing to recognize Petitioner's

---

[1]Following the district court's denial of relief on his ineffective assistance claim, Moody sought a COA before this court solely on that issue. We denied Moody's application as to each of the arguments in support of that claim and dismissed his petition as to that claim. *See Moody v. Dretke*, 2003 WL 22296947 (5th Cir. Oct. 2003) (unpublished).

standing to contest the issue. [The State] now argues that, the trial court's erroneous ruling notwithstanding, Petitioner should have proceeded to a *Batson* inquiry by attempting to prove intentional discrimination. [The State] trivializes the practical effect of the trial court's ruling that Petitioner lacked standing to raise a *Batson* issue. As a practical matter, any attempt to analyze the merits of a *Batson* claim in that forum would have been pointless; the trial court had already erroneously prevented Petitioner from developing the issue. Any attempt to make an extensive record or persist in his claim would have been a waste of judicial resources.

As part of the *Batson* analysis, a "trial court . . . will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. In ignoring its obligation through an inaccurate standing ruling, the trial court disabled Petitioner's efforts to comply with his burden. [The State] now asks this Court, on the basis of a cold record alone, to consider the *Batson* framework and the petition. [However,] [t]he trial court prevented Petitioner from making a case under *Batson*; [furthermore,] the record is silent as to the prosecutor's true intent, demeanor, or credibility. [Therefore,] [t]he Court of Criminal Appeals' failure to apply fully *Powers* to this case was both contrary to and an unreasonable application of Supreme Court precedent.

*Moody v. Dretke*, H-00-CV-1450, at 2 (S.D. Tex. Sep. 30, 2002) (supplemental memorandum opinion and order). Based on these findings, the district court provisionally granted habeas relief on the equal protection claim.

In the same supplemental memorandum opinion and order, the district court addressed the issue of the correct remedy needed to rectify the state trial court's violation of Moody's equal protection rights. The court stated:

In its earlier order, this Court instructed the parties to address what relief is available in this case. [The State] only argues that a federal evidentiary hearing is unavailable. Petitioner contends that this Court should order a new trial. In support of his argument, Petitioner submits an affidavit by the trial prosecutor. . . . There, the prosecutor states that any hearing would be unproductive as he has no recollection of his motive in peremptorily striking [Mr. Hightower] eight years ago. As it appears that a hearing at this late date would not be feasible, the State of Texas must retry Petitioner.

*Id.* at 3. Faced with the futility of ordering a remand to reconstruct the *Batson* hearing, the district court ordered the State to either retry Moody within 180 days from its ruling, or release him from custody. In December of 2002, that order was stayed by the district court pending the outcome of this appeal.

The State now urges us to reverse the district court's final judgment provisionally granting Moody's petition for habeas corpus. The State's sole basis for reversal is that Moody failed to rebut the race-neutral explanation voluntarily proffered by the prosecutor. Moody, on the other hand, vigorously contends that the decision of the district court should be affirmed.

## II. DISCUSSION

### A. Standard of Review

In reviewing a grant of the writ of habeas corpus, this court reviews a district court's findings of fact for clear error and reviews de novo the district court's disposition of pure issues of law and mixed issues of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because Moody's petition was filed after the effective date of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, our review is governed by a more heightened standard of review. Accordingly, a federal writ of habeas corpus may not issue to a petitioner seeking relief under AEDPA, unless the state adjudication of his claim,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Ogan v. Cockrell*, 297 F.3d 349, 355 (5th Cir. 2002). Moreover, a writ of habeas corpus pursuant to § 2254 should not issue solely on the basis that the state court

6

committed error. Rather, the writ should be granted only if the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Absent a direct conflict with Supreme Court authority, habeas relief is available only if the state court decision is factually or legally unreasonable in light of the evidence present in the state court proceeding. *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Notwithstanding, an unreasonable application of federal law is not the equivalent of an incorrect application of federal law. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Indeed, a federal writ may not issue merely because the state court incorrectly applied federal law; the application must also be unreasonable. *Id.* at 411. An unreasonable application occurs "if the state court identifies the correct governing legal principles from [the Supreme Court's] decision, but unreasonably applies that principle to the facts of the [petitioner] prisoner's case." *Id.*

In the instant case, our focus is on the third step of the *Batson* inquiry, the court's determination as to whether the defendant carried his burden of proving purposeful discrimination. This determination is a question of fact. *United States v. Kelley*, 140 F.3d 596, 606 (5th Cir. 1998) ("The district court's determination that a party has used peremptory strikes in a discriminatory manner is a finding of fact and thus cannot be overturned by this Court absent clear error."). Accordingly, Moody is only entitled to relief if the state court's determination constituted "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

B. Equal Protection Under *Batson*

7

The Supreme Court has long since made clear that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from striking prospective jurors solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *accord United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998) (recognizing that the Fifth Amendment prohibits use of peremptory strike of prospective jurors solely on the basis of race). In *Batson*, the Court delineated a three-step analysis for evaluation of a defendant's claim that a prosecutor used a peremptory strike in a racially discriminatory manner: (1) a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for striking the juror in question; and (3) the trial court must determine whether the defendant carried his burden of proving purposeful discrimination. *See Hernandez v. New York*, 500 U.S. 352, 358-59 (citing *Batson*, 476 U.S. at 96-98). The ultimate burden of persuasion lies at all times with the defendant. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995); *see also Miller-El v. Dretke*, 361 F.3d 849, 853 (5th Cir. 2004), *rev'd on other grounds*, 545 U.S. 231(2005).

For the second step of the analysis, a prosecutor is not allowed to merely deny that he did not have a discriminatory motive; he must provide a specific explanation that is clear and reasonable. *Elem*, 514 U.S. at 768. Although the prosecutor's explanation must be clear and reasonable, the explanation is not required to be persuasive or even plausible. *Id.* at 767-68; *see also United States v. Huey*, 76 F.3d 638, 640-41 n.12 (5th Cir. 1996). The question is the "facial validity" of the explanation. *Elem*, 514 U.S. at 768. Therefore, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered [by the prosecutor] will be deemed race neutral." *Id.* at 768.

Whether a defendant has carried his burden under *Batson*'s third step to prove purposeful discrimination is based on the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike. *Id.* This step of the analysis is extremely fact intensive. Because of the importance of demeanor and credibility evidence in making such determinations, this step of the analysis should lie solely in the province of the trial judge. *Id.* Indeed, it is at this stage that the persuasiveness of a prosecutor's explanation becomes relevant. Accordingly, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id.*

### 1. Texas Trial Court

As stated, "[u]nder the AEDPA deference scheme, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of facts are reviewed under § 2254(d)(2)." *Trevino v. Johnson*, 168 F.3d 173, 181 (5th Cir. 1999). Accordingly, Moody is not entitled to habeas relief unless the state court's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Further, a state court's factual findings are presumed to be correct unless contravened by clear and convincing evidence. § 2254(e)(1). With this standard of deference in mind, we consider Moody's equal protection claim.

From our review of the record, it is patently clear that the state trial court's ruling was contrary to clearly established Supreme Court law. The trial court did not even consider Moody's request for a *Batson* hearing because it incorrectly concluded that Moody had no standing to challenge the prosecution's exclusion of Hightower. As noted above, the Supreme Court has held that defendants have standing to raise a prospective juror's equal protection claim by way of a *Batson*

9

challenge, even if the prospective juror is of a different race. *Powers*, 499 U.S. at 415. Because of the trial court's erroneous ruling in contravention of *Powers*, it did not broach the three-step analysis required to evaluate a defendant's *Batson* challenge. Given the Supreme Court's holding in *Powers*, we find that the state trial court's ruling was an unreasonable application of clearly-established Supreme Court law. As to AEDPA's requirement that this court defer to the state trial court's findings of fact, this directive is not applicable as to this state trial court because it failed to make any findings of fact relative to the heart of Moody's claim.

### 2. Texas Court of Criminal Appeals

Essentially acknowledging that the state trial court's decision is not entitled to deference under AEDPA, the State contends alternatively that the district court should have denied relief based on the Texas Court of Criminal Appeals' holding regarding Moody's *Batson* claim. It contends that the Texas Court of Criminal Appeals' rejection of Moody's *Batson* claim was proper because the prosecutor's reason for striking Hightower was a valid race-neutral explanation. The State argues that because of AEDPA's deferential standard requiring that reviewing federal courts defer to the factual findings of state courts, the district court committed error when it failed to accede to the Texas Court of Criminal Appeals' factual findings that the prosecutor's race-neutral explanation was sufficient and that Moody failed to prove discriminatory intent. We agree.

The Supreme Court has held that "the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982); *see also Rolan v. Vaughn*, 445 F.3d 671, 680 (3d Cir. 2006) (applying presumption of correctness to appellate court's findings of fact where petition was filed after the effective date of AEDPA); *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003) (same); *Bugh v. Mitchell*,

329 F.3d 496, 501 (6th Cir. 2003) (same). In the instant case, we have already determined that the state trial court did not conduct the three-step *Batson* test. Nevertheless, the Texas Court of Criminal Appeals on direct appeal did so in its stead. First, the Texas Court of Criminal Appeals presumed that Moody made the requisite showing necessary to establish a prima facie case to challenge the prosecutor's peremptory strike of Hightower. The Texas Court of Criminal Appeals next concluded that the State had volunteered a valid race-neutral explanation sufficient to meet its burden under step two of the analysis. Based upon its review of the record, the court concluded that Moody failed to prove that the prosecutor was motivated by discriminatory intent and thus failed to satisfy his burden under step three of the *Batson* analysis.

In considering Moody's petition for federal habeas relief, instead of determining whether the record supported the Texas Court of Criminal Appeals' finding that the prosecutor was not motivated by discriminatory intent, the district court essentially concluded that the Texas Court of Criminal Appeals erred by not remanding the case to the state trial court to conduct a proper *Batson* hearing. Recognizing the futility of ordering a remand to reconstruct the *Batson* hearing, the district court ordered a new trial.

Given the Supreme Court's directive in *Batson* that the third step of the analysis should lie solely in the province of trial judges, 476 U.S. at 98, it is easy to understand the district court's analysis of this claim. The district court found that the Texas state courts erred, first by failing to recognize that Moody had standing under *Powers* to challenge the prosecutor's use of peremptory strikes, and second, by failing on direct appeal to remand the case back to the state trial court to

11

conduct a proper *Batson* hearing.[2] Nevertheless, the district court's task was not to assess whether it agreed with the state court's ruling, but to determine whether the state court's finding was entitled to the presumption of correctness and to decide whether that determination was unreasonable in light of the evidence presented. *Cf. Rice v. Collins*, 126 S. Ct. 969, 973 (2006) ("Though it recited the proper standard of review, the panel majority improperly substituted its evaluation of the record for that of the state trial court."); *Brown v. Payton*, 544 U.S. 133, 143 (2005) ("Even on the assumption that its conclusion was incorrect, it was not unreasonable, and is therefore just the type of decision that AEDPA shields on habeas review.").

In *Elem*, 514 U.S. 765, the Supreme Court considered the Eighth Circuit's reversal of a district court's denial of habeas relief in similar circumstances. During jury selection for Jimmy Elem's ("Elem") trial, a defendant charged with second degree robbery for snatching a young woman's purse, Elem objected to the prosecutor's use of peremptory strikes to exclude two prospective black jurors, prospective jurors 22 and 24. *Id.* at 766. The prosecutor, without request from the state trial judge, offered explanations for its strikes of the two prospective jurors. *Id.* With regard to prospective juror 22, the prosecutor explained that he struck the juror because he had "long, unkempt hair, a mustache, and a beard." *Id.* at 769. Prospective juror 24 was struck because the juror had previously been robbed with a sawed-off shotgun. *Id.* at 766. The prosecution's rationale was that because juror

---

[2]Indeed we agree that the better practice would have been for the Texas Court of Criminal Appeals to remand the case to the trial court to conduct a *Batson* hearing. In *Wardlow v. State*, 6 S.W. 3d 786 (Tex. App. 1999), the trial court overruled the defendant's *Batson* violation, acknowledging that it was irrelevant but noting that the defendant was white and concluding based on the trial judge's experience with the prosecutors that they were not striking the jurors based on race. The appellate court noted the Supreme Court's decision in *Powers* and reversed and remanded the case to the trial court, holding that the prosecution's peremptory strike of the only remaining black venire-member established a prima facie case of a *Batson* violation. *Id.* at 787-88.

number 24 was robbed with an actual gun, he would not be able to find Elem guilty of robbery because Elem did not use a gun to commit his offense. *Id.* "The state trial court, without explanation, overruled [Elem's *Batson*] objection and empaneled the jury." *Id.* In other words, the state trial judge, concluding that Elem did not establish a prima facie case of race discrimination, failed to engage any of the three-step *Batson* analysis. *See id.* at 770 (Stevens, J., dissenting). On direct appeal, the state appeals court affirmed the state trial court's judgment, finding that the "'state's explanation constituted a legitimate 'hunch' and that '[t]he circumstances fail[ed] to raise the necessary inference of racial discrimination.'" *Id.* at 766 (majority opinion) (quoting *State v. Elem*, 747 S.W.2d 772, 775 (Mo. App. 1988)).

On federal habeas review, the district court, applying the deferential standard required under § 2254(d), affirmed the state appeals court, holding that based on the record "the Missouri courts' determination that there had been no purposeful discrimination was a factual finding entitled to a presumption of correctness." *Id.* at 767. On review to the Eighth Circuit Court of Appeals, the panel reversed the district court's decision and remanded the case with instructions that the district court grant Elem's petition for writ of habeas corpus. *Id.* The Eighth Circuit essentially concluded that the prosecution's explanation for striking prospective juror 22 was pretextual. *Id.*

The Supreme Court granted certiorari and reversed the Eighth Circuit, concluding that the panel had conflated steps two and three of the *Batson* analysis. *Id.* 768. The Court stated that the panel erred by "requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive." *Id.* The Court admonished the panel stating, "[i]t is not until the *third* step that the persuasiveness of the justification becomes relevant–the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful

13

discrimination." *Id.* (citing *Batson*, 476 U.S. at 98). The Court stated that the prosecutor's explanation for striking prospective juror 22, i.e., that "he had long, unkempt hair, a mustache, and a beard," was a sufficient race-neutral basis to satisfy the prosecution's burden under step-two of the analysis. *Id.* at 669. The Court then concluded that from the prosecutor's race-neutral explanation, "the inquiry properly proceeded to step three, where the state court found that the prosecutor was not motivated by discriminatory intent." *Id.*

On remand, the Eighth Circuit followed the Supreme Court's instructions "to reevaluate, under the proper § 2254(d) standard, [the Missouri Court of Appeal's] 'finding of no racial motive.'" *Elem v. Purkett*, 64 F.3d 1195, 1200 (8th Cir. 1995) (quoting *Purkett v. Elem*, 514 U.S. at 769). The court's review of the record revealed the following:

> When petitioner's counsel objected to the prosecutor's use of peremptory strikes to eliminate jurors 22 and 24, the trial judge noted, and then the prosecutor argued, that there was no evidence that jurors 22 and 24 were in fact African American. The prosecutor nonetheless stated that he struck jurors 22 and 24 because of their mustaches and beards, which "look[ed] suspicious," and because of their hair, which the prosecutor "[didn't] like." Responding to the trial court's comment and the prosecutor's responsive argument, the defense attorney requested that the court either allow him to ask the two jurors if they were black or take judicial notice of the fact that they were black, in order to establish a record of the jurors' race. The trial court responded, "I am not going to do that, no, sir."

*Elem*, 64 F.3d at 1199 (alterations in original) (citations omitted). The Eighth Circuit explained that "after the prosecution offered its reasons for striking jurors 22 and 24, petitioner made no attempt to persuade the trial court that the prosecutor's reasons for striking juror 22 were merely a pretext for purposeful discrimination." *Id.* at 1201. Indeed, defense counsel's response to the trial court's refusal of his request was: "Okay. Nothing further." *Id.* at 1200 n.7. Accordingly, the Eighth Circuit held that

14

because the prosecutor proffered reasons for striking juror 22 that were facially race-neutral, and petitioner made no attempt to persuade the state trial court that the prosecutor's reasons for striking juror 22 were merely a pretext for purposeful discrimination, the trial court's finding of no racial motive is fairly supported by the record, and petitioner is not entitled to habeas relief on his *Batson* claim.

*Id.* at 1201.

In the instant case, when the trial court erroneously stated that Moody could not assert a *Batson* claim, defense counsel responded "Thank you. Note our exception."[3] The judge then indicated that Mr. Hightower was free to go; however, the prosecutor immediately offered his race-neutral reason for dismissing Hightower. The judge once again stated that Mr. Hightower was free to leave. Defense counsel did not respond. We understand why defense counsel may have been reluctant to pursue the issue before the trial court; nevertheless, we conclude that Moody's failure

---

[3]The colloquy transpired as follows:

MR. GUERINOT: We would like the record to reflect that this juror is a black male, and we would ask the State to specifically state in the record, after your voir dire and mine, the racially impartial reason that they are exercising a strike.

THE COURT: That will be denied, being the fact that the Defendant in this case is white. He is not part of any racial minority.

MR. GUERINOT: Thank you. Note our exception.

THE COURT: Give the gentleman an excuse and tell him he is free to go.

MR. MORRIS: In addition to that, if it be needed–probably doesn't need to–our point would be, of course, the records of the two brother-in-laws [sic], one robber and one dope pusher, and he says they can be rehabilitated, even though they have been up twice before.

THE COURT: Tell him he's free to go and thank him for being with us.

to argue on appeal that the prosecution's reasons were pretextual is fatal to any argument that he was denied an opportunity to carry his burden.

On appeal to the Texas Court of Criminal Appeals, defense counsel did not even attempt to argue that the prosecution's reasons for striking Hightower were pretextual. Instead, counsel argued only that "[t]he State failed to articulate a racially neutral reason, or any other reason, for exercising a peremptory strike on Mr. Hightower." But, as we noted above, the prosecutor's stated reason for striking Hightower was that he had two brothers-in-law that had been imprisoned and who he believed could be rehabilitated. It is understandable that defense counsel did not attempt to respond to the prosecutor's stated reasons following the trial judge's ruling that Moody lacked standing; nevertheless, we hold that Moody's failure to do so before the Texas Court of Criminal Appeals precludes a finding that the Texas Court of Criminal Appeals' determination was unreasonable.

Our conclusion is bolstered by defense counsel's objection to the prosecution's strike of a second juror on *Batson* grounds. In an effort to preempt a second erroneous ruling that *Batson* did not apply, defense counsel established a prima facie case that the prosecutor exercised a peremptory strike on the basis of race. The prosecutor then articulated several reasons for the strike including the juror's memory loss and her statement that she could not follow the evidence. Defense counsel responded by arguing that the prosecutor's explanation was not supported by the witness's testimony. The trial judge then made a finding that the juror was not struck because of her race. In his brief to the Texas Court of Criminal Appeals, Moody contended that there was nothing in the record to support the prosecutor's stated reasons for striking Lathon; however, he did not point to any evidence, or lack thereof, with regard to the prosecutor's stated reasons for striking Hightower. The Texas Court of Criminal Appeals found that the prosecutor's stated reasons for striking Hightower

16

are supported by the record and that Hightower was struck for those reasons and not because of his race. Moody has not rebutted these findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The district court's opinion and Moody's argument that the third stage of the *Batson* test necessarily requires a trial judge, not a reviewing appellate court, to scrutinize the demeanor, and thereby, the credibility of a prosecutor's offering are quite forceful and are indeed supported by the Supreme Court's own admonition. *See Batson*, 476 U.S. at 98; *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion) ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge."). Further, we are mindful that the Supreme Court has observed that "[t]here might be instances, however, in which the presumption [of correctness] would not apply to appellate factfinding . . . . For example, the question . . . . might in a given case turn on credibility determinations that could not be accurately made by an appellate court on the basis of a paper record." *Cabana v. Bullock*, 474 U.S. 376, 388 n.5 (1986), *overruled in part on other grounds*, *Pope v. Illinois*, 481 U.S. 497 (1987); *see also Buxton v. Lynaugh*, 879 F.2d 140, 146 (5th Cir. 1989). But Moody did not argue that the prosecutor's demeanor demonstrated that his reasons for striking Mr. Hightower were pretextual; indeed, Moody has made no argument that the prosecutor's reasons were pretextual. Consequently, we cannot conclude that the state court's determination that the prosecutor did not strike Hightower because of his race was unreasonable in light of this record.

Accordingly, although we might disagree with the Texas Court of Criminal Appeals' failure to remand the case to the trial court, the Texas Court of Criminal Appeals' finding that the prosecutor's striking of prospective juror Hightower was not a violation of Moody's equal protection rights was not unreasonable and is therefore not grounds for habeas relief. The district court's determination to the contrary is VACATED.

## III. CONCLUSION

For the foregoing reasons, the order of the district court granting Moody's petition for habeas relief is VACATED. This case is REMANDED for further proceedings consistent with this opinion.

VACATED AND REMANDED.

DENNIS, Circuit Judge, dissenting:

When Moody's state trial counsel made a <u>Batson</u> objection to the state prosecutor's peremptory challenge of a black juror, the state trial court cut him off at the knees, ruling <u>sua sponte</u> that Moody did not have standing to object because Moody is white. Undisputedly, the state trial court's no-standing decision was contrary to the rule of federal law clearly established by the Supreme Court in <u>Powers v. Ohio</u>. 499 U.S. 400 (1991) (holding that under the Equal Protection Clause, a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded jurors share the same race).

The state trial court's ruling foreclosed any opportunity for: (1) Moody to make a prima facie showing of discrimination; (2) the State to make a valid proffer of a race-neutral basis for the challenge; or (3) Moody to show that the State's proffer would have been pretextual and that the challenge was race-based. Thus, the state trial court's immediate, <u>sua sponte</u> ruling also precluded the making of a record from which an appellate court could reasonably make a factual finding of racial discrimination <u>vel non</u> or a determination that the legal errors and omissions were harmless.

19

All this is evident from the unbroken train of events that rapidly followed Moody's objection to the peremptory challenge: (1) the trial court immediately ruled sua sponte that Moody did not have standing to object; (2) defense counsel noted his exception to the court's ruling; (3) the trial court excused the black juror from further jury service; (4) the prosecutor agreed with and accepted the benefit of the trial court's no-standing ruling, but interjected a reference to his reasons for the strike, stating that "[i]n addition to that, if it be needed - probably doesn't need to - . . . the records of the two brother-in-laws [of the juror], one robber and one dope pusher, and he says they can be rehabilitated, even though they have been up twice before . . . ;" and (5) the trial court signified his insistence on his no-standing ruling and sustained the prosecutor's peremptory challenge by directing that the black juror be told that he was "free to go" and thereby released from further jury duty.

The district court correctly determined that a writ of habeas corpus must be granted because (1) the state trial court unquestionably violated the clear, firm rule of Powers by holding that Moody lacked standing to object to the race-based exclusion of a black juror through peremptory challenge because Moody "is white . . . [and] not part of any racial minority";" (2) the state trial court compounded its Powers error by also violating the clearly established rules of Batson v. Kentucky, 476 U.S. 79 (1986), when

20

it failed to conduct any of the three steps required by <u>Batson</u> after Moody objected that the state prosecutor had used a race-based peremptory challenge to exclude a black juror; (3) the Texas Court of Criminal Appeals ("CCA"), despite its recognition that the state trial court's decision was contrary to <u>Powers</u>, acted contrary to or unreasonably applied <u>Batson</u> by purporting to find as a fact that the prosecution's peremptory challenge had not been based on racial discrimination, although the record before it was completely devoid of any semblance of the state trial court's compliance with any of the three clearly established steps and procedures required by <u>Batson.</u>

The majority scouts for a way to say that the CCA's decision, although flatly contrary to <u>Batson</u>, was not unreasonable. But each theory it advances is itself contrary to or an unreasonable application of those clearly established Supreme Court holdings. First, the majority vaguely suggests that the collection of decisions related to <u>Purkett v. Elem</u> is a reasonable basis to think that a state appellate court might decide a <u>Batson</u> challenge originally and <u>ab initio</u> despite the trial court's failure to undertake any of the three steps. <u>See</u> <u>Purkett v. Elem</u>, 514 U.S. 765 (1995); <u>Elem v. Purkett</u>, 64 F.3d 1195 (8th Cir. 1995); <u>State v. Elem</u>, 747 S.W.2d 772 (Mo. Ct. App. 1988). But the <u>Elem</u> gestalt is diametrically different and inapposite at every juncture: there, after the trial court accepted the defendant's prima facie showing

21

and the prosecution's making of a valid race-neutral proffer, the defendant failed to prove that the proffered reason was a pretext for racial discrimination. Elem affirms and follows Batson. Here, contrary to the Elem decisions, as the majority repeatedly admits, Moody was not allowed to broach any of the Batson phases; and the prosecutor's interjection, coming after he agreed that Moody lacked standing to complain about the State's racially based peremptories, was tacitly but clearly rejected by the trial court as an invalid and unnecessary proffer. Second, the majority's notion that in the state appellate court Moody somehow waived his right to object to race based peremptories that he was denied the standing to assert in the trial court is also incorrect. Neither the CCA opinion nor the State's briefs there or here even hint at a waiver, as the majority in effect holds, in the sense of an express or implicit failure to avail oneself of a known right or to assert a claim, and the majority's opinion presents no reasonable basis for supposing that Moody somehow declined to assert his Batson claim in the CCA while at the same time complaining vigorously that he had been denied standing to assert it below.

In my opinion, Powers and Batson clearly establish that Moody had standing to object to the peremptory challenge, to make a prima facie case and to prove racial discrimination on the merits in the trial court, and Batson unmistakably does not allow a state appellate court to make the factual determination of racial

22

discrimination in peremptory challenges vel non in the absence of a record of such a previous finding by the trial court. In Batson, the Supreme Court applied by analogy from its equal protection jurisprudence a burden-shifting framework for the analysis of objections to peremptory strikes as discriminatory. It established a three-step analysis: first, the defendant must make a prima facie showing that the peremptory challenge was racially motivated; second, the prosecutor must then articulate a race-neutral reason for the strike; and third, the trial court must determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 96-98. Batson noted that at the third step, "[s]ince the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Id. at 98 n.21. Batson involved a virtually identical fact pattern, and the court remanded to the trial court "[b]ecause the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action." Id. at 100.

Batson plainly does not authorize an appellate court to take evidence or to act as the initial fact-finder regarding whether a peremptory challenge was racially motivated. Nor does it allow appellate judges to speculate as to what would have happened in the absence of the trial court's Batson error or to hypothesize a record for review in a case in which the trial court failed to make

findings as to whether the defendant made out a prima facie case of racial discrimination, whether the prosecution had proffered a race neutral explanation, and whether the defendant prevailed on the ultimate issue of intentional racial discrimination. In the final analysis, the CCA's decision in the present case is, at best, a review of a hypothesized three-step inquiry that was never made by the state trial court, or, at worst, rank speculation that the prosecutor's uninvited, unaccepted, and untraversed faux-proffer concerning Hightower's brothers-in-law must have been the true basis for the prosecutor's peremptory challenge.

Nothing in AEDPA or the Supreme Court's jurisprudence reasonably supports the CCA in making credibility calls on peremptory challenges against black jurors based on a trial record devoid of evidence, traverse, contradictory hearing, or judicial questioning. It was well settled prior to AEDPA that, in habeas corpus proceedings in federal courts, the factual findings of state courts were presumed to be correct, but that the presumption was rebuttable and the findings could be set aside if they were "'not fairly supported by the record.'" Purkett, 514 U.S. at 769 (citing 28 U.S.C. § 2254(d)(8); Marshall v. Lonberger, 459 U.S. 422, 432 (1983)). Under this rebuttable presumption rule, it was not material that the factual findings were made by a state reviewing court rather than a trial court. See Sumner v. Mata, 455 U.S. 591, 592-93 (1982); Sumner v. Mata, 449 U.S. 539, 546 (1981).

However, the Supreme Court held that although the <u>Sumner</u> cases established that the presumption applies to facts found by appellate as well as trial courts, there were instances in which the presumption would not arise with respect to appellate fact-finding — for example, in a case which turned on credibility determinations that could not be accurately made by an appellate court on the basis of a paper record. <u>See Cabana v. Bullock</u>, 474 U.S. 376, 388 n.5 (1986) (citing <u>Anderson v. Bessemer City</u>, 470 US. 564, 575 (1985); <u>Wainwright v. Witt</u>, 469 U.S. 412, 429 (1985)).

In <u>Childress v. Johnson</u>, 103 F.3d 1221, 1226 n.7 (5th Cir. 1997), this court held that AEDPA retained the traditional presumption of correctness afforded to state court factual determinations, <u>id.</u> at 1225 (citing 28 U.S.C. § 2254(e)(1)), but that the presumption continues to be rebuttable because, post-AEDPA, "[s]ection 2254(d)(2) authorizes issuance of the writ if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented.'" <u>Id.</u> at 1226 n.7. Consequently, section 2254(d) does not require this court to defer to the CCA's finding of fact exonerating the State of racial bias in striking Hightower, the black juror. That finding lacks support in the record and was thus an "unreasonable determination of the facts in light of the evidence." <u>Id.</u> Moreover, that unsupported finding appears to have been designed to improperly shield and

25

excuse the trial court's clear violation of the constitutional requirements set forth in <u>Batson</u> and <u>Powers</u>.

The trial court in this case never initiated the <u>Batson</u> inquiry, and the record does not contain even a first-step analysis. Rather, the trial court refused to consider the issue on the ground that Moody lacked standing to make the objection. We have previously described <u>Batson</u> findings by the trial court as a "prerequisite for proper appellate review." <u>United States v. Romero-Reyna</u>, 889 F.2d 559, 560 (5th Cir. 1989). The Supreme Court has made the importance of these findings taking place at the trial court level plain in <u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991), which held that:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." <u>Wainwright v. Witt</u>, 469 U.S. 412, 428 (1985), <u>citing Patton v. Yount</u>, 467 U.S. 1025, 1038 (1984).

The trial court's <u>Powers</u> error here led it to default completely on its duty under <u>Batson</u> to make a three-step analysis. The CCA here attempted to conduct the third step of the <u>Batson</u> analysis on its own, despite the Supreme Court's admonition in <u>Hernandez</u> that this role was peculiarly within the trial judge's province and despite the trial judge's failure to make findings as to any of the three

26

steps. It based its findings on a cold, woefully incomplete record and an uninvited, equivocal, unaccepted and unexamined proffer of a race-neutral reason by the prosecutor. It had no opportunity to observe the demeanor of the prosecutor, described by Hernandez as often the "best evidence" in this situation. The CCA was required to remand for a three-step analysis as per Batson, and to do anything else was contrary to or an unreasonable application of Batson.

Finally, while Moody may not have gone outside of the trial court record before the CCA to identify a particular aspect of the prosecutor's demeanor which suggested racial motivation in this case, as the majority surmises, this does not detract from the general rule that an appellate court errs by attempting to make a credibility determination at the appellate level on a cold or hollow record.

Subtle and nonverbal cues such as a wink, a glance, or a brief hesitation are often perceived by a fact-finder only indirectly and subconsciously. The rule requiring that it be a trial judge who scrutinizes the demeanor of a witness is in place precisely because these cues would be difficult, if not impossible, to identify on appeal. "A transcript cannot reveal tone, speech inflections, mood and other indicia of a mental state and certainly cannot pick up subtle but crucial changes in [the prosecutor's] demeanor." Bruce v. Estelle, 536 F.2d 1051, 1062 (5th Cir. 1976). Moreover, such an

27

appellate credibility determination based on a trial court record devoid of judicial inquiry, contradictory hearing or evidence is patently devoid of fairness and due process.

Moody plainly preserved this argument by, at the first available opportunity in his briefs to the federal district court, arguing that a "[t]rial judge at least might recall the demeanor of the prosecutor and prospective jurors while reviewing the record. The CCA absolutely could not." After citing law to the effect that only a trial court may make in-person credibility assessments,[1] Moody argued that "the TCCA did not, and could not, make an 'in person credibility assessment,' and there was no such assessment in front of it for review. This means, the TCCA could not make a reasonable assessment of racial discrimination vel non."

The majority's further contention that Moody failed to argue that the prosecutor's stated reasons for striking Hightower were pretextual is also troubling. First, Moody was not required to make such an argument, considering the trial court's clear legal errors in its ruling and proceedings contrary to Powers and Batson. Second, Moody's briefs to the district court certainly made this argument anyway, flatly stating that "[t]he record of individual voir dire proves, however, that the prosecution['s] explanation for its strike was pretextual." Moody pointed both to statistical

---

[1] See United States v. Montgomery, 210 F.3d 446, 453 (5th Cir. 2000) (citing United States v. Wallace, 32 F.3d 921, 925 (5th Cir. 1994)).

28

evidence of a disproportionate number of black jurors being struck from the venire in this case and to several white jurors who Moody argues stated similar views and yet were not struck by the prosecutor. While Moody's briefs before the CCA did not detail the reasons why Moody believed the strike of Hightower to be pretextual, this failure certainly does not amount to a waiver, as implied by the majority. In response to Moody's briefs identifying a clear error and requesting remand (which the majority concedes is the appropriate remedy), the CCA on its own initiative chose to engage in appellate fact-finding. Moody could hardly have been expected to foresee and brief this sua sponte action by the court. Furthermore, we cannot state with certainty that Moody did not challenge the strike as pretextual because the record on appeal does not contain a transcript of any oral proceedings before the Texas Court of Criminal Appeals and contains no indication that an evidentiary hearing was held prior to the appellate fact-finding. We have no indication that Moody was ever permitted to offer evidence that the strike was pretextual, as he requested of the district court. In fact, it appears that this appellate finding of fact was made without an evidentiary hearing - which, given the refusal of the trial court to allow the Batson inquiry to proceed to even the first step, gave Moody no opportunity to meet his burden at the unreached third step by introducing evidence

challenging the State's backhanded proffer of a reason for the strike as pretextual.

The burden of proving any waiver by Moody of his arguments lies on the State. See, e.g., 31 C.J.S. Estoppel and Waiver § 213 (2006) ("The burden of proving waiver is on the party claiming or asserting it, or alleging and relying on it, or raising an issue as to it."). The State's brief to the district court describes the facts as if no evidentiary hearing ever occurred, arguing in a footnote that the only "hearing" necessary for a state appellate court to make a finding of fact is to allow the parties opportunity for written and oral argument. The State's briefs before us contain no allegation of waiver and do not give us any indication as to whether oral argument occurred in the CCA or what was said at any hearing. We cannot, on the incomplete record before us and on our own initiative, presume a waiver. Moody's first opportunity to challenge the CCA's sua sponte effort to reach the third step of the Batson inquiry was before the district court, and it is plain that he argued there that the state's proffered reason was pretextual.

For these reasons, I respectfully dissent from the majority's reversal of the district court's judgment. Ordinarily, I believe a remand to re-conduct the Batson analysis is the most appropriate remedy. However, in this case the hearing took place over a decade ago, and the prosecutor has submitted an affidavit stating that he

does not remember the reasons motivating his strike and could not now testify to them. On these circumstances, I cannot say that the district court erred in ordering a new trial. See Barnes v. Anderson, 202 F.3d 150, 157 (2d Cir. 1999) (ordering a new trial instead of a hearing on the Batson issues because the passage of time and an incomplete record made a hearing unlikely to allow a reliable analysis of the voir dire); Riley v. Taylor, 277 F.3d 261, 293 (3d Cir. 2001) (holding that the passage of time rendered remand for a Batson hearing inappropriate as a remedy and that "statistical evidence, which might be the subject of some analysis at such a hearing, is relevant but not dispositive to our decision" and could not alone justify a remand over a new trial); Brown v. Kelly, 973 F.2d 116, 121-22 (2d Cir. 1992) (holding that, by contrast, an evidentiary hearing was a more appropriate remedy where the prosecutor testified that he vividly remembered his reasons for striking the jurors and testified about them in detail, the defense counsel had contemporaneous notes taken at the voire dire, and only six years had passed).

For these reasons, I respectfully dissent.