IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 4, 2009

Charles R. Fulbruge III
Clerk

No. 07-11159

SCOTT DARREL HOGUES,

Petitioner-Appellant,

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:07-CV-759

Before DAVIS, SMITH, and OWEN, Circuit Judges.

PER CURIAM:[*]

Scott Hogues appeals the denial of his petition for a writ of habeas corpus.

We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Hogues was convicted by a Texas state jury of aggravated assault of a public servant and evading arrest. He filed the instant petition after his convictions were sustained on state direct and collateral review. He asserts that during jury selection, the state exercised its peremptory challenges in a racially discriminatory fashion, violating his rights under the equal protection clause of the Fourteenth Amendment under *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court denied relief but granted a certificate of appealability ("COA") as to the *Batson* claim.[1]

The state used five of its ten peremptory challenges to strike black jurors from the panel, so only one of six black veniremen was seated. Hogues objected at trial, and the state provided race-neutral explanations.

In his brief, Hogues addresses only one of the strikes, of Chatea Mills.[2] The state explained that it had struck Mills because of her "relationship [to] people who were in the penitentiary," referring to her husband, who was "on [two and a half years of] felony probation currently" and to her brother-in-law, "who's convicted of a felony, who's in the pen." Because the state viewed Hogues's prosecution as "a punishment case," it struck veniremen who might be unable to treat Hogues punitively.[3]

The trial court inquired as to why the state had not struck two white veniremen who also, according to their questionnaires, had relatives under the su-

---

[1] Hogues also unsuccessfully advanced an ineffective-assistance-of-counsel claim based on *Strickland v. Washington*, 466 U.S. 668 (1984). He was denied a COA on that claim, so we do not consider it. *See United States v. Kimler*, 150 F.3d 429, 430-31 & n.1 (5th Cir. 1998).

[2] Hogues's objections to the other four are accordingly deemed abandoned. *Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

[3] Consistently with this, the state noted, it also struck certain veniremen who, on their jury service questionnaires, had ranked "rehabilitation" higher than "punishment" on a list of possible purposes of criminal sanctions.

pervision of the criminal justice system: Jeanine Byrd (whose grandson was serving six months of probation on a drug offense) and Mary Tweed (whose nephew had been to jail, and who was then serving six months of probation for mail fraud). The state responded that the family relationships were closer in Mills's case, that Mills's relatives' crimes and punishments were more severe, and that Mills had two convicted relatives, but Byrd and Tweed had only one each. The court found no *Batson* violation.

## II.

In *Batson*, the Court established a three-part test for racially discriminatory use of peremptory challenges. *See Moody v. Quarterman*, 476 F.3d 260, 266-267 (5th Cir. 2007). First, the defendant must make a *prima facie* showing that the state used its peremptory challenges discriminatorily. *Batson*, 476 U.S. at 93-97. If the defendant does so, the burden shifts to the state to "articulate a neutral explanation [for its challenges] related to the particular case to be tried." *Id*. at 98. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion)).

If the state answers the *prima facie* case in that way, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination" based on all the evidence. *Batson*, 476 U.S. at 98. The court evaluates the state's explanation, asking "not whether [the state's] reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based." *United States v. Bentley-Smith*, 2 F.3d 1368, 1375 (5th Cir. 1993) (per curiam). "Because of the importance of demeanor and credibility evidence in making such determinations, this step of the analysis should lie solely in the province of the trial judge." *Moody*, 476 F.3d at

267.[4] "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Elem*, 514 U.S. at 768.

We review the state court's treatment of Hogues's *Batson* claim according to the framework of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. The state court's finding at the central focus of this appeal, *Batson* step three––i.e., that the state did not commit racial discrimination in its use of peremptory challenges––is a question of fact. *See Miller-El*, 537 U.S. at 339-41 (2003). Therefore, we look to § 2254(d)(2)and (e)(1) for our standard of review. These provisions are highly deferential to the state court:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted . . . unless the adjudication of the claim—
> ...
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(2). We examine only the reasonableness of the result of the state court's adjudication, not "every jot" of its reasoning. *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001). Moreover,

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1). In short, "[o]ur role on appeal is to determine whether the trial court's determination of the prosecutor's neutrality with respect to race was ob-

---

[4] *See also Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003) ("[A] reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations. . . . [O]nce [the credibility of the prosecutor's explanation] has been settled, there seems nothing left to review.") (internal quotation marks omitted) (quoting *Hernandez*, 500 U.S. at 367).

jectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 341).

Although Hogues has established a *prima facie* case, the state no less responded with race-neutral explanations. As to the ultimate question, the Texas courts did not err in concluding that the state struck Mills, and declined to strike Byrd and Tweed, for non-racial reasons.[5] The trial court was entitled to credit the state's account; its decision to do so was not "unreasonable in light of the evidence," nor has Hogues brought "clear and convincing evidence" to rebut it.

AFFIRMED.

---

[5] This court has accepted explanations similar to that proffered by the state concerning Mills—albeit together with other factors—as to two black veniremen struck in *United States v. Valley*, 928 F.2d 130, 135-36 (5th Cir. 1991).