# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70036

DANNY PAUL BIBLE,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-200

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Petitioner-Appellant Danny Paul Bible ("Bible") was convicted of capital murder in Texas and sentenced to death. He now seeks a certificate of appealability ("COA") from the district court's denial of habeas corpus relief. Because Bible has failed to make a substantial showing of a denial of a constitutional right, we deny his application for a COA.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70036

## I.

In June 2003, Bible was convicted of a capital murder that he committed in 1979. He was sentenced to death, and the Texas Court of Criminal Appeals affirmed his conviction in 2005.[1] The federal district court, on habeas review, ably set out the relevant facts and procedural history as follows:

On May 27, 1979, a man found the blood-covered body of 20–year–old Inez Deaton along the slope of a bayou in Houston, Texas. The victim was not wearing pants, and her underwear had been partially torn from her body. Her corpse bore signs of a violent attack. Someone had stabbed her eleven times with an ice pick. Bruises covered her head. Her partially clothed state, along with vaginal and anal trauma, indicated that someone had sexually assaulted her. The physical evidence suggested that her killer had dragged her corpse to the location and then positioned her body by spreading her legs apart.

A few days before, Mrs. Deaton had stopped by the house next door to where Bible lived to use the telephone. Mrs. Deaton was a young mother and friend of Bible's sister. The neighbor suggested that she use the telephone at Bible's home. Another neighbor saw Mrs. Deaton enter Bible's house. No one ever saw Mrs. Deaton alive again.

Around the time of Mrs. Deaton's funeral, Bible disappeared. Over the next two decades Bible lived a life of extreme violence. He fled to Montana and Wyoming where he entered into an abusive relationship with a woman. He committed aggravated kidnappings and theft in Montana. Returning to Texas, he committed rapes and murders. In 1984, he pleaded guilty to a separate murder. After his release on parole, Bible sexually assaulted his five young nieces.

On November 7, 1998, Bible burst into Tera Robinson's hotel room in Louisiana and violently sexually assaulted her. Subsequently, the police arrested him in Florida where he confessed to various prior crimes. On December 16, 1998, Bible gave the Louisiana police a statement admitting to the attack on Ms. Robinson,

---

[1] *Bible v. State*, 162 S.W.3d 234 (Tex. Crim. App. 2005).

No. 14-70036

although he claimed not to remember the actual sexual assault. During that questioning, he informed the Louisiana police that he had murdered Mrs. Deaton. The police in Louisiana contacted authorities in Texas.

Bible then gave two additional tape-recorded statements on December 18. In the first, Bible confessed to having killed Mrs. Deaton. Bible remembered that he was watching television when Mrs. Deaton came to the door. He immediately grabbed her and forced her to have sex with him. She resisted and they struggled. Bible remembered strangling her and using a knife on her. He remembered putting her in the trunk of a car and dumping her body. However, Bible claimed that he could not remember the actual sexual assault or murder. In a second statement on the same day, Bible confessed to raping a woman in 1983 and then killing her and her baby. Later, Bible confessed to numerous sexual offenses against his five young nieces between 1996 and 1998.

In March 2001, the State of Texas charged Bible by indictment with capital murder for the aggravated rape and murder of Mrs. Deaton. Before trial, Bible's attorneys moved to suppress his police statements. After holding a hearing, the trial court denied Bible's motion to suppress.

Testimony in the guilt/innocence phase of trial lasted only two days. Witnesses described the circumstances surrounding Mrs. Deaton's disappearance. Family members testified about suspicious acts by Bible after Mrs. Deaton went missing. The State's case, however, turned on what was called "the most compelling, most believable, best evidence you can ever have in a criminal case:" a confession. Other than Bible's suspicious acts immediately after Mrs. Deaton's disappearance, only his confession connected him to her killing. The jury found Bible guilty of capital murder.

Jurors decided Bible's sentence by answering three questions: (1) did Bible act deliberately, (2) would he constitute a future threat to society, and (3) did mitigating circumstances warrant that he receive a life sentence? Bible's attorneys faced a herculean task in defending against a death sentence. The prosecution's case portrayed Bible as an extremely violent man who showed little

hope of rehabilitation. Through his confessions and testimony from his victims, the prosecution recounted Bible's decades of lawlessness. In an unremitting history of violence toward women and children, Bible had repeatedly committed sexual assaults and kidnappings. He admitted that he had raped his own stepdaughter while holding a knife to his wife's throat. He had raped an eleven-year-old girl in Montana. He beat girlfriends. He had committed robberies and theft. He sexually assaulted his young nieces while on parole from a lengthy prison sentence. His behavior did not improve as he aged. Most importantly, the prosecution showed that Bible had killed at least four times.

Against that background, trial counsel tried to show that Bible could control his behavior in a highly structured environment. The defense argued that Bible had only committed two minor infractions during seventeen years of prior incarceration. A minister testified that he had a spiritual encounter with Bible and that Bible had completed a religious education course.

The jury answered Texas' special issue questions in a manner requiring the imposition of a death sentence.

Through appointed counsel, Bible challenged his conviction and sentence on automatic direct appeal to the Texas Court of Criminal Appeals. Appointed counsel raised sixteen points of error. On May 4, 2005, the Court of Criminal Appeals affirmed in a published opinion. *Bible v. State,* 162 S.W.3d 234 (Tex. Crim. App. 2005). Bible's conviction became final when the time for filing a petition for writ of certiorari to the United States Supreme Court expired on August 2, 2005.

Under Texas law, state appellate and habeas review run concurrently. Through appointed habeas counsel, Bible filed a state application for a writ of habeas corpus on March 8, 2005. Bible's state habeas application raised seven grounds for relief. Bible's prior attorneys submitted affidavits responding to his claims of ineffective representation. The state habeas court signed the State's proposed findings and conclusions without alteration. Based on the lower court's order and its own independent review, the Court of Criminal Appeals denied habeas relief. *Ex Parte*

No. 14-70036

*Danny Paul Bible,* WR–76,122–01, 2012 WL 243564 (Tex. Crim. App. Jan. 25, 2012) (unpublished).[2]

Bible then filed a federal petition for writ of habeas corpus in the United States District Court for the Southern District of Texas, asserting eight grounds for relief.[3] The district court denied his petition and refused to grant a COA on any issue.[4] Bible now seeks a COA on two issues.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this habeas proceeding.[5] Under 28 U.S.C. § 2253, a federal habeas petitioner cannot appeal the district court's denial of his petition without first obtaining a COA, which requires the petitioner to make "a substantial showing of the denial of a constitutional right."[6] At the COA stage, unlike full appellate review, "[w]e look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[7]

If a district court has rejected a claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[8] If the district court has rejected a claim on procedural grounds, the petitioner must "show[], at least,

---

[2] *Bible v. Stephens*, No. 4:13-CV-200, 2014 WL 5500722, at *1-3 (S.D. Tex. Oct. 30, 2014).

[3] *Id.* at *3.

[4] *Id.* at *32.

[5] *Trottie v. Stephens*, 720 F.3d 231, 239 (5th Cir. 2013).

[6] 28 U.S.C. § 2253(c)(2).

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

[8] *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[9]

> We evaluate the debatability of [the petitioner's] constitutional claims against the backdrop of the AEDPA's highly deferential standard. Under the AEDPA, a federal court may not grant habeas relief unless the petitioner has first exhausted state remedies with respect to the claim at issue. 28 U.S.C. § 2254(b). To prevail, the habeas petitioner must prove that the state court's constitutional adjudication resulted in either a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. § 2254(d)(1)–(2). . . . When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the state court's factual findings, *Moody v. Quarterman,* 476 F.3d 260, 267–68 (5th Cir. 2007), and consider only the record that was before the state court, *Cullen v. Pinholster,* —— U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).[10]

Finally, "[w]hile the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case 'any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor.'"[11]

## III.

Bible seeks a COA on two issues: (1) whether his death sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because his current physical disabilities objectively render him no future danger to anyone, and (2) whether his trial counsel was ineffective in failing to

---

[9] *Id.* (emphasis added).

[10] *Garza v. Stephens,* 738 F.3d 669, 673-74 (5th Cir. 2013).

[11] *Ramirez v. Dretke,* 398 F.3d 691, 694 (5th Cir. 2005) (quoting *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000)).

No. 14-70036

object to a physical demonstration of Bible's November 7, 1998 rape by the prosecutor during the punishment phase. No reasonable jurist would debate either of these claims.

## A.

For Bible's first claim, he asserts that following his conviction and sentence, the prison van transporting him to death row was involved in an automobile collision that left both drivers dead and caused Bible to sustain severe injuries. Among other medical problems, he claims to suffer from permanent disabilities in the form of severe pain throughout his body, the inability to lift his arms without support, severe headaches, regular blackouts, and chronic exhaustion.[12] He argues that his debilitating physical problems have caused him to be wheelchair bound and objectively render him no longer a future danger to anyone and that executing him would therefore constitute cruel and unusual punishment under the Eighth Amendment.

Restated, Bible's claim is that the Eighth Amendment forbids the execution of an offender who, though physically capable of posing a future danger at the time of trial and sentencing, becomes physically incapable of posing a future danger after trial, even though that offender remains mentally competent. Bible has pointed to no opinion by any court setting out such a rule of constitutional law. As the federal district court, on habeas review, explained:

> Requiring a *jury* to predict an inmate's future threat is a common feature in criminal sentencing. However, the Supreme Court has never held that a death-row inmate is entitled to another future dangerousness determination several years after his sentencing.

---

[12] The State argues that Bible's assertions regarding his physical health and prognosis are essentially self-serving and do not establish whether he may, in fact, present a future danger, but we need not reach that issue.

No. 14-70036

This Court cannot grant relief on these claims without creating a "new rule" of constitutional law . . . .[13]

We concur.

Bible argues that his claim is merely an extension of principles set out in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and *Ford v. Wainwright*, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986). We disagree. Both of those cases concerned the offender's mental capacity, not physical capabilities, and their rationale is fundamentally different from the reasoning put forward by Bible.

In *Roper*, the Supreme Court held that the Eighth Amendment prohibits the death penalty for offenders who were under the age of 18 when their crimes were committed, based in part on the fact that juvenile offenders are less mature and more irresponsible than adults; that they are "more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and that "the character of a juvenile is not as well formed as that of an adult" and their personality traits are "more transitory, less fixed."[14] In *Ford*, the Supreme Court held that the Eighth Amendment prohibits the death penalty for an offender who becomes insane after sentencing, based in part on the highly questionable "retributive value of executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life" and "the natural abhorrence civilized societies feel at killing one who has no capacity to come to grips with his own conscience or deity."[15]

Bible has never argued that he lacked mental capacity at the time of his offense or that he lacks mental capacity now. His claim rests entirely on his diminished physical capabilities. Because no rule of constitutional law

---

[13] *Bible v. Stephens*, 2014 WL 5500722 at *10 (citations omitted, emphasis in original).
[14] *Roper*, 543 U.S. at 569-70.
[15] *Ford*, 477 U.S. at 409.

8

prohibits the death penalty under these circumstances, no reasonable jurist would debate this issue. Accordingly, we deny a COA on this claim.

## B.

Next, Bible argues that his trial counsel was ineffective for failing to object to the prosecutors' physical demonstration of Bible's 1998 rape of Tera Robinson during the punishment phase of the trial. Under *Strickland v. Washington*,[16] we apply a two-pronged test to claims of ineffective assistance of counsel. First, the petitioner must "show that trial counsel's representation was deficient—that is, it 'fell below an objective standard of reasonableness.'"[17] Second, the petitioner "must demonstrate prejudice: a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[18] AEDPA deference raises the bar for an ineffective-assistance-of-counsel claim even higher:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." [*Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.[19]

---

[16] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[17] *Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688).

[18] *Id.* (quoting *Strickland*, 466 U.S. at 694).

[19] *Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011).

No. 14-70036

Thus, under AEDPA, we may not grant federal habeas relief on a claim which the state court has already determined to be meritless "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[20]

The federal district court examined the relevant facts and concluded that Bible is not entitled to relief on his ineffective-assistance-of-counsel claim:

> During the punishment phase of trial, the State presented testimony and evidence concerning the sexual assault Bible committed that led to his arrest. In his police statement, Bible admitted that he broke into Tera Robinson's Louisiana motel room, restrained her, and tried to stuff her into a duffle bag, but claimed that he did not specifically remember sexually assaulting her. The State played for the jury Bible's audiotaped confession. When the State called Ms. Robinson to the stand, she testified that Bible
>
>> forcibly pushed open her motel room door when she cracked it open after hearing a knock; that [Bible] grabbed her by the throat slammed her against the wall, and lifted her off the ground; that [Bible] threw her onto a bed, climbed on top of her, and pinned her down by straddling her and holding down her arms; that [Bible] ripped off her shirt and took off his pants and then straddled "her over her chest" and forced his penis into her mouth; that [Bible] "slid down" Robinson after forcing her to perform oral sex on him and then forced his penis into her vagina; that [Bible] tied Robinsons ankles and wrists after sexually assaulting her; and that [Bible] attempted to stuff her into a duffle bag.
>
> State Habeas Record at 407; Tr. Vol. 22 at 49–74.
>
> As Ms. Robinson testified, the two prosecutors acted out the assault. The prosecutors' demonstration "comprised ten pages of Robinson's thirty-eight pages of testimony." State Habeas Record at 407. As Ms. Robinson described the attack, Ms. Siegler apparently lay down on the counsel table while Mr. Goodhart pinned her arms down with his knees, straddled her, and

---

[20] *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

otherwise positioned himself as Bible did. Later during Ms. Robinson's testimony, Ms. Siegler replicated how she looked after Bible had tied her. Also, the prosecutors apparently also acted out Ms. Robinson's description of how Bible tried to stuff her into a duffle bag.

Trial counsel did not object to the in-court demonstration, though in his state habeas affidavit he said: "I wish I had[.]" State Habeas Record at 351. Even so, trial [counsel] did not think objecting would make any difference: "I doubt that the trial court would have sustained that objection and further doubt that the Court of Criminal Appeals would reverse a case based on that demonstration at a punishment hearing in a death penalty case." State Habeas Record at 351.

Bible claims that trial counsel provided ineffective representation by not objecting to the demonstration. Bible argues that "[t]he prosecutors' dramatic reenactment had no purpose except to inflame the passions of the jury. It was wholly unnecessary to assist the jury in visualizing the scene, or ascertaining the calculated nature of Bible's actions, the degree of force Bible used, or Bible's physical mastery of victim." (Docket Entry No. 5 at 61). Because the jury had already heard Bible's confession to some of the events, and Ms. Robinson's testimony filled in any gaps, Bible argues that "the reenactment was either so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process[.]" (Docket Entry No. 5 at 61).

The state habeas court found no deficient performance by trial counsel. The state habeas court suggested that it would not have sustained any objection because the demonstration "logically assisted the jury in understanding and visualizing Robinson's testimony concerning [Bible's] actions, his degree of force, and Robinson's physical positions and helplessness during the attack." State Habeas Record at 408. In fact, the state habeas court concluded that the demonstration "was necessary to counter [Bible's] attempt to minimize the amount of force he used during the assault and his self-serving claim that he did not remember the assault and had been drinking heavily[.]" State Habeas Record at 422. Also, the "in-court demonstration was necessary and admissible to show [Bible's] calculated actions, his degree of force, and his physical mastery of Robinson." State Habeas Record at

No. 14-70036

422. Echoing the mechanics of Tex. R. Crim. Evid. 403, the state habeas court stated "the probative value of the reenactment of [Bible's] rape of Robinson was not substantially outweighed by the danger of unfair prejudice, and any emotional and prejudicial aspects of the reenactment were substantially outweighed by the helpful aspects of the reenactment." State Habeas Record at 422.

On federal habeas review, this Court's concern is not whether the prosecution's dramatic reenactment was proper under state rules of procedure, consistent with proper courtroom decorum, permissible in federal court, or in keeping with the prosecutor's solemn duty as officers of the court. This Court's concern is whether the state court's adjudication was unreasonable, which requires Bible to show "that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at ——, 131 S. Ct. at 786–87. Here, Bible had confessed to attacking Ms. Robinson, but stopped short of admitting that he had sexually assaulted her. Ms. Robinson provided detailed testimony that adequately allowed jurors to understand the violence and brutality associated with the rape. While the prosecutors' theatrics possibly drew Bible's assault into sharper focus, Bible makes a good argument that the jurors already had before them the essential features of the episode.

Still, the state courts considered the evidentiary basis for Bible's proposed objection and essentially found that any objection would have been overruled. Importantly, the prosecutors' dramatization of the attack was superfluous and came before jurors in the midst of a highly prejudicial punishment phase. Jurors had to consider Bible's life-long violence which involved repeated murders and sexual assaults. Given Bible's unremitting violence, the state courts would not be unreasonable in finding no federal constitutional error in the prosecutors' demonstrative actions. Bible, therefore, has not shown that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).[21]

Having examined the record, we conclude that the federal district court's summary of the facts is accurate, and we also conclude that its analysis is

---

[21] *Bible v. Stephens*, 2014 WL 5500722 at *15-17.

fundamentally correct under the standards set out above. Because Bible cannot show that the state court unreasonably resolved his ineffective-assistance-of-counsel claim relating to the prosecutors' demonstration of Bible's 1998 rape, he cannot prevail on this claim under AEDPA's deferential standard. No reasonable jurist would debate this issue, and we therefore deny a COA as to Bible's ineffective-assistance-of-counsel claim.

## IV.

Because all of Bible's arguments lack merit, his request for a COA is hereby DENIED.